STATE OF MINNESOTA vs. CHARLES R. MIMS. (1st Case.)

October 10, 1879.

**Challenge—Court acting as Trier.**—The decision of a court upon a question of actual bias of a juror, submitted to it for determination by consent, is final.

**Naturalization of Minors.**—Where the father becomes a naturalized citizen, during the minority of his children resident with him in this country, the latter need not, upon coming of age, take out naturalization papers to entitle them to the privileges of citizenship.

**Secondary Evidence good unless objected to.**—The admission of secondary evidence to prove a fact furnishes no ground for a new trial, unless it was objected to at the time, and an exception was taken to the ruling of the court admitting the evidence.

**Embezzlement by County Treasurer—Official Bond.**—On the trial of an indictment against defendant for an embezzlement of state moneys received by him as a county treasurer, under the provisions of Gen. St. c. 38, proof of the execution of the bond, required by section 39 of that chapter, is not essential to maintain the charge.

**Same — Edorsement of Certificate of Settlement with Auditor.**—His written endorsement, officially, as such county treasurer, upon a certificate of settlement had between him and the county auditor, pursuant to law, made at the time of the settlement, and acknowledging its correctness, is competent evidence against him as an admission of the truth of the matters stated in the certificate. When such certificate of settlement is properly admitted in evidence to prove the facts therein stated, the basis upon which the settlement was made may also be shown as part of the *res gestæ*.

**Same—Admissions by Defendant before Commission of Offence**—An admission by such defendant of a material fact in support of the indictment against him is competent evidence against him, when the fact itself and its admission both occurred before the commission of the offence charged, and neither involves any criminal intent or conduct, or any acknowledgment of guilt on his part.

**Same—Failure to pay Draft of State Auditor.**—A failure by a county treasurer to pay over to the proper officer, on demand, a draft upon him by the state auditor in favor of the state treasurer, for moneys in his hands belonging to the state, as evidenced by the last certificate of settlement between him and the county auditor, is *prima facie* evidence of an embezzlement.

**Same — Failure to pay over to Successor in Office.—** On the trial of an indictment against defendant for the embezzlement of public moneys received by him as county treasurer, his refusal to pay over the moneys shown so to have been received, on the demand of one claiming to be his successor in office, on the sole ground that no such moneys were in his possession or under his control, may be shown as evidence upon the question of embezzlement, without proof that the party making the demand was rightfully entitled to the office.

**Refusal to instruct in Terms of Request.—** A refusal to give a request in the terms asked is not error, when the legal proposition embraced in the request is fully covered and correctly stated in the instructions given.

**Impeaching Verdict — Jurors' Affidavits.—** A verdict cannot be impeached by the affidavits of individual jurors.

The defendant, as late county treasurer of McLeod county, was tried and convicted in the district court for that county, before *Macdonald*, J., on an indictment for embezzlement of state funds.    John Thom and C. Johnson, when called as jurors, were severally objected to for general disqualification. Thom testified that he was born in Scotland, of Scotch parents, and came to this country with them when he was 13 years of age, and then testified that, during his minority, his father was naturalized.    Johnson testified that he was born in Norway and had taken out his naturalization papers in McLeod county. In neither case was any other than oral evidence of naturalization produced, and in each case the challenge was found not to be true by the court, and the defendant excepted.

The state introduced evidence tending to show a resignation of the office of treasurer by the defendant, and the appointment of one Sievers as his successor, and that Sievers had ever since acted as treasurer; that after such appointment Sievers requested defendant to turn over to him the moneys in his hands.    It appeared that Sievers was born in Germany, and the only proof that he had made declaration of his intention to become a citizen of the United States, was his own testimony to the fact, received under objection and exception by the defendant, after the witness had testified to a diligent search for his naturalization papers, and inabil-

ity to find them. The other exceptions are stated in the opinion. The defendant appeals from an order refusing a new trial.

*W. W. Erwin* and *J. V. V. Lewis,* for appellant.

*Geo. P. Wilson,* Attorney General, for the State.

CORNELL, J. Indictment for embezzlement of money belonging to the state, exceeding in amount the sum of $100. The indictment alleges specifically that the defendant was county treasurer of McLeod county from February, 1876, to and including August 24, 1877; that between the first day of March, 1877, and the fifteenth day of June, 1877, both days inclusive, he, as such county treasurer, collected and received from divers persons, for the permanent school fund, for the general school fund, and for the general university fund of the state, divers sums of money, therein particularly stated, amounting in the aggregate to $4,706.44, and that he afterwards, to wit, on the twenty-fourth day of August, 1877, unlawfully and feloniously embezzled and converted the same, and the whole thereof, to his own use, contrary to the form of the statute, etc. The indictment is well and carefully drawn, and no valid objection can be urged against it.

In impanelling the jury, the court, with the consent of both parties, acted in the place of triers, and whatever effect the law accords to the decisions of the latter, upon questions properly submitted to them, must also be given to those of the former, while acting in their stead. Its determination, therefore, of the challenge for actual bias, which was interposed to the juror Danick, was a finality, and cannot be reviewed in this court, even though brought before us upon an exception properly taken. Gen. St. *c.* 116, § 31.

Upon the evidence, the juror Thom became a citizen by virtue of the naturalization of his father, he being under the age of twenty-one years at the time. 2 Kent, (12th ed.) 512. The ruling of the court in admitting that evidence was not excepted to, and its correctness is not, therefore, before us. In respect to the trial of the challenge of Johnson for general

disqualification, the evidence was received without objection,. and upon the facts proved the challenge was correctly over- ruled.

To maintain the indictment it was material for the state to prove the collection and receipt of the moneys charged to have been taken, by the defendant as county treasurer of Mc-Leod county, and their subsequent embezzlement by him, while holding them in that capacity. It is not questioned that the defendant held such office, and exercised all its func- tions, during the time when the moneys are alleged to have been received, and misappropriated or embezzled. Whether,. before receiving them, he gave to the state the bond required by Gen. St. c. 38, § 39, as it was his duty to have done, is unimportant as respects the question of his criminal liability for their wrongful conversion. If he assumed the right of making the collections as county treasurer, it does not lie with him, when called upon to account therefor to the state, to object that he had no legal right so to do, because he had omitted to give the prerequisite security against loss which the law required of him solely for the protection of the state. Proof that he executed such bond was, therefore, unneces- sary on the part of the prosecution.

As evidence that the defendant, as county treasurer, col- lected and received the identical moneys charged in the indict- ment, and was justly liable therefor to the state, on the fif- teenth day of June, 1877, the prosecution was allowed—after showing a settlement then had between him, as such treas- urer, and the county auditor, as required by law, in respect. to all moneys theretofore received by him subsequent to the date of his last preceding settlement, on account of principal,. interest and penalties arising from former sales of school,. university and internal-improvement lands—to introduce the then county auditor's official certificate of such settlement. and collections so made, together with the defendant's official written endorsement, made thereon at the time, acknowledg- ing its correctness. This was clearly competent evidence, as.

an admission by defendant of the truth of the facts recited in the certificate. Like admissions generally, it was, of course, not conclusive, but was open to contradiction or explanation by other competent evidence. The record before us contains all the evidence, and it appears that no attempt of this character was made by the defendant. The written acknowlegment was, therefore, sufficient proof to establish the facts covered by the admission.

The objection of defendant to the introduction of this evidence, and to the ruling and instruction of the court in regard to its legal effect, was founded upon the erroneous idea that the written acknowledgment was in the nature of a confession by the defendant. Such was not its character or import. A confession, in the legal sense, involves the idea of criminality. It applies only to a direct or implied acknowledgment of guilt, after an offence committed, but does not extend to admissions of matters of fact which in themselves are innocent and involve no criminal intent. 1 Greenl. Ev. § 170; Taylor on Ev. § 654. The facts covered by the admission in this case do not of themselves, by any implication, impute any criminal or even wrongful conduct to the defendant. It was part of his official duty to make the settlement he did with the county auditor. The moneys he admitted to have collected and received came lawfully into his possession, and an acknowledgment that he then held them, and was liable therefor to the state, could in no possible way affect him criminally, because it was his duty so to hold them while he remained in office, until properly demanded of him by some competent authority.

It was proved that the settlement referred to in the certificate was made partly, if not wholly, from the school-land stubs on file with the county auditor, and the official record of the corresponding duplicate receipts given by the county treasurer, as kept by the auditor in a book provided for that purpose, pursuant to the provisions of Gen. St. *c.* 38, § 41. The introduction of the stubs and the record in evidence was,

therefore, proper as a part of the *res gestæ* of the settlement which was covered by the defendant's admission.

In respect to all moneys received and held by any county treasurer, and which may be due the state, whether "arising from the collection of taxes or other sources," that officer is required by statute to pay the same out, whenever properly ordered, upon the draft of the state auditor drawn in favor of the state treasurer. Gen. St. *c.* 8, § 130. It is also his duty to make settlement with the county auditor on the fifteenth day of June, in each year, of all moneys received by him for state purposes, and the state auditor is thereupon authorized at any time thereafter to draw upon him, in favor of the treasurer of state, for any money found due the state and in the county treasury, upon such settlement, as indicated or evidenced by the certificate of settlement of the county auditor; and it is his duty to pay all drafts so drawn, whenever properly presented and demanded. Gen St. *c.* 8, § 134, as amended by act of March 5, 1869. (Gen. St. 1878, *c.* 8, § 156.) A failure to pay any such draft, or to pay over or produce, when properly demanded, any state or school funds entrusted to him as such county treasurer, is declared by the constitution to be *prima-facie* evidence of an embezzlement. Const. art. 9, § 12.

It is indisputable, upon the record before us, that it was proved by competent evidence, without any attempt at contradiction, that the moneys so found due the state from the defendant, upon the June settlement with the county auditor, —the correctness of which was certified to by that officer and acknowledged by the defendant,—were duly demanded of him by the state treasurer, upon the draft of the state auditor in his favor, and that the defendant has wholly failed and omitted to pay the same. In his answer to such demand, personally made upon him by the state treasurer, the defendant distinctly recognized his liability to the state for the amount of the draft, his neglect in not having paid it before, and his inability to pay it at that time, coupled with a promise to

remit in a few days, which has never been done. In view of these uncontroverted facts, it is clear that the case on the part of the prosecution was fully made out, and that the verdict must be sustained, unless some error is shown to have been committed which may have affected the result adversely to the defendant. None such is discoverable upon the record before us. The rulings of the court upon the subject of the defendant's written resignation, and the appointment of Sievers as his successor, were clearly correct; but, whether so or not, it is plain that they could have occasioned no harm to the defendant. His response, after resignation, to the demand then made upon him by Sievers, as his official successor, for the possession of the office and the surrender of certain funds specified in the demand as then being in the county treasury, was a proper matter for the consideration of the jury. In answer to the demand, "he turned over to Sievers orders and vouchers to the amount of $7,681.54," stating that "as to the balance of the several funds specified in the demand, he refused to pay over the same, for the reason that he had no funds in his hands or under his control to comply therewith." In this, the validity of his own resignation, and the legal right of Sievers as his lawful successor in office, were not questioned, but his refusal was placed upon the sole ground of want of funds, thereby corroborating the fact of embezzlement, already *prima facie* made out on the part of the prosecution. The effect of this as an admission was the same whether Sievers had any right to make the demand or not. The questions, therefore, of Sievers's ineligibility to the office, and the regularity of his appointment, as well as of the acceptance of his own written resignation, and its effect in terminating his official relations with the county, become wholly immaterial and need not be considered, although, upon the evidence, we have no hesitation in holding that, at the time of the demand, Sievers was at least an officer *de facto*, acting under color of an appointment by a board having authority to make it, and

as such he was lawfully entitled to make the demand which he did.

It is not deemed necessary to advert in detail to the numerous exceptions taken to the rulings of the court upon the trial, for the views already expressed sufficiently cover all questions thereby raised, so far as they are material or can possibly affect the merits of the controversy. Although refused in terms, the eleventh request of the defendant was substantially embodied in the instructions that were given, and hence its refusal was not error.

The subject of his fourteenth request was fully and correctly explained in the general charge, and the proper distinction made between a mere admission and a confession; and the court was therefore justified in declining to give this request in the language asked, especially as the use therein of the words, "admission" and "confession," as interchangeable terms, identical in meaning, might well have misled the jury.

The alleged misconduct of the jury, while out deliberating upon their verdict, was rightly disregarded as a ground for a new trial, because there was no evidence adduced in its support except the affidavits of individual jurors; and the doctrine is well settled that the verdict of a jury cannot be impeached in that way. Hilliard on New Trials, *c.* 10, § 63, *et seq.*, and cases there cited.

Decision and order affirmed.

––––––––

At the same time with the foregoing opinion, the following opinion was filed. The defendant, having been convicted on an indictment for embezzling county moneys, appeals from an order denying a new trial.

CORNELL, J. This case was submitted without argument or points, upon the statement that the questions involved were all fully presented and argued upon the submission, at

the same time of an appeal in another action between the same parties, arising out of the trial of a similar indictment against the defendant, designated as "Indictment No. 2," and that the determination of this appeal would follow the decision in that.

Order affirmed.