STATE v. MULLER TAYLOR.

133 N. W. (2d) 828.

February 26, 1965—No. 39,255.

*Grant J. Merritt,* for appellant.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Philip J. Bloedel,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from a district court judgment of conviction.

Defendant was charged by information filed by the county attorney of Hennepin County with having violated Minn. St. 617.32, which provides in part:

"Subdivision 1. It shall be unlawful for any person to knowingly accept or receive, in whole or in part, his or her support or maintenance from the proceeds or earnings of any woman engaged in prostitution."

During the course of the trial, William J. Brady, a member of the police force of the city of Minneapolis and head of the morals squad, related a conversation which he had at about 4:30 p. m., on February 8, 1963, with the defendant, who had been arrested on February 7, 1963, and was then confined in the city jail at the courthouse in Minneapolis. As of that time, defendant was without counsel and had not been taken before a magistrate. Accompanied by Officer Richard C. Strom, Officer Brady approached the defendant in the jail and served on him a warrant charging him with having received the earnings of a prostitute in violation of the statute. Officer Brady proceeded to relate the conversation which then ensued as follows:

"A. He said, 'It looks like you have got me cold this time,' and I said, 'Yes, it does,' and then he said, 'Can I talk to you alone?' and I said, 'Sure.'

"Q. Did you then move or go to another area?

"A. Yes, we went over to the matron's side where there's some interrogation rooms over there where it's private.

\* \* \* \* \*

"Q. Okay. Tell us then what was said, please.

"A. He asked, 'I don't suppose it would do me any good to try and make a deal,' and I said, 'No, it wouldn't.' And he said, 'Not even marijuana and some heavy stuff on the north side?' And I said, 'Listen, Mueller. You tried the same thing last time and I told you I can't and won't make any deals. However, if you want to tell us about the narcotics, I am willing to listen, but with the idea that no deal and you are telling us of your own volition.'

"Q. Did he make any response to that?

"A. No, he didn't. The only thing he said, 'What's the warrant for?' And at that time he had a copy, and I said, 'It's for receiving the earnings of a prostitute.' And he said, 'I want you to know something. She came to me, I didn't go to her.' And I said, 'Mueller, on this charge it wouldn't make—it wouldn't make a particle of difference who went to who. You received the earnings and that is that.'

\* \* \* \* \*

"Q. Was there anything further said while the two of you were in this room?

"A. I think this is when Officer Strom came in.

\* \* \* \* \*

"Q. Then in his presence was there any further conversation?

\* \* \* \* \*

"A. I asked Mr. Taylor who the bartender was and what his name was that had gone with this girl, and he said, 'I can't tell you that; that is my ace in the hole. He knows—' And he is talking about the bartender here. He says, 'He knows that I didn't make the deal for the girl.' And I told him that 'There's one way to prove it. Tell us where he is and what his name is and we'll pick him up and talk to him right in front of you, and if he corroborates your story, you shouldn't be afraid of it,' and that 'I would be glad to go to the

County Attorney and tell him what had transpired in front of you with this witness.' He said he didn't think he should do that, and I said, 'Well, I'll tell you what. I am not going to pressure you, I don't want to force you to do anything that you don't want to do, but' I said, 'I would appreciate it if you would think it over and if you change your mind, either give me a call, whether it's night or day, and I'll come up and discuss it with you, or another officer will, or we will discuss it in front of you with this other witness,' and it was at that time that I left and I didn't see him till the next day then."

Officer Strom was also called as a witness by the state and he repeated so much of the conversation as occurred in his presence.

No objection was made to the receipt of this evidence at the time of trial and there was no motion to strike. Consequently, the trial judge did not have occasion to rule upon its admissibility. No requests were made by defendant's counsel for instructions which would have permitted the jury to disregard the quoted conversation if it found the admissions to constitute involuntary self-incrimination. And, although the trial court did on its own motion instruct the jury as to the considerations involved in testing the credibility of admissions made or alleged to have been made under the circumstances here involved, it did not instruct the jury as to the circumstances under which admissions should be considered involuntary and, therefore, wholly disregarded.

Defendant contends that he was deprived of a fair trial by the quoted testimony and the failure of the trial court to instruct the jury with respect to its duty to disregard incriminating admissions not voluntarily made. In perceptive and scholarly briefs, defendant's court-appointed counsel urges, in substance:

(A) That admissions of the kind here involved are in the nature of confessions and should be so regarded.

(B) That before admissions to police officers are received in evidence in criminal cases it should be made to appear (1) that the reported statements are not a byproduct of illegal arrest or detention, and (2) that the defendant making the admissions does so voluntarily, i. e., (a) with the knowledge of his right to counsel;[1] his right to re-

---

[1]Kamisar, Lewis: Gideon's Trumpet, 78 Harv. L. Rev. 478.

main silent; and the fact that the admissions may be used against him in the event of trial, and (b) under circumstances where the exercise of his will to disclose was not influenced by threats, promises, or improper inducements.

(C) That when such admissions are received in evidence, the jury should be instructed to disregard them if not voluntary and to consider, in deciding voluntariness or the lack of it, such factors as (1) whether defendant was informed when apprehended of his right to counsel; his right to remain silent; and the possible use of any statements made against him; (2) whether defendant was afforded or denied opportunity to consult with an attorney; (3) whether the statements were made before defendant was given an opportunity to appear before a magistrate and, if so, whether the failure to make such appearance possible before securing the admissions was justified; (4) whether threats, promises, or inducements of a nature likely to influence the election to confess were made and, if made, whether of a kind to prevent the free admission of guilt by a person with the experience, education, and background of the defendant in the particular case.[2]

Defendant urges that standards of "fundamental fairness," binding upon the states in the conduct of criminal proceedings by virtue of the due process of law clause of the Fourteenth Amendment as inter-

---

[2]The failure to provide counsel will void a conviction. Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. ed. (2d) 799, 93 A. L. R. (2d) 733; United States ex rel. Durocher v. LaVallee (2 Cir.) 330 F. (2d) 303. A confession obtained from a defendant who has been denied counsel directly (Escobedo v. Illinois, 378 U. S. 478, 84.S. Ct. 1758, 12 L. ed. [2d] 977) or indirectly (Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. ed. [2d] 246) cannot be admitted over objection. But no case has gone so far as to hold that the failure to provide counsel to a defendant when the investigation has begun to focus on him bars prosecution after counsel has been provided. Consequently, the fact that the public defender who represented defendant, both at preliminary hearing and trial, was not appointed until almost 2 weeks after defendant's arrest is significant in this case essentially because the admissions attributed to the defendant were made before the attorney's services commenced.

preted by the United States Supreme Court, compel a reversal of the conviction.

There is authority for the proposition that under some circumstances admissions may be the equivalent of confessions.[3] And the rationale of decisions holding inadmissible upon Federal constitutional grounds evidence secured as the result of an illegal search would seem to apply with equal validity to incriminating statements made by a defendant as a byproduct of illegal arrest and detention.[4]

The receipt in evidence of a confession which fails to meet the Federal test of voluntariness[5] deprives the defendant of due process of law if his conviction is founded in whole or in part upon the involuntary confession, regardless of its truth or falsity. Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. ed. (2d) 908. The defendant has a Federal constitutional right to object to the use of a confession and to have a fair hearing and a reliable determination on the issue of voluntariness of the confession, without regard to its truth or falsity.[6] If a determination is made, after a proper fact hearing, that a confession or admission is voluntary, there seems to be no Federal constitutional requirement that the issue be again submitted to the jury for its con-

---

[3]Ashcraft v. Tennessee, 327 U. S. 274, 66 S. Ct. 544, 90 L. ed. 667; McCormick, Evidence, § 113; Lockhart, Kamisar & Choper, Cases on Constitutional Law, p. 747; Slough, *Confessions and Admissions*, 28 Ford. L. Rev. 96; Gorham, *Involuntary Admissions Should Not Be Competent Evidence*, 19 Temple L. Q. 485. See, Opper v. United States, 348 U. S. 84, 75 S. Ct. 158, 99 L. ed. 101; Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977; 22A C. J. S., Criminal Law, § 732. See, also, Scott, *Federal Control Over Use of Coerced Confessions in State Criminal Cases—Some Unsettled Problems*, 29 Ind. L. J. 151.

[4]See, Minn. St. 629.14, 629.32, 629.39, 629.40, 629.44; Beck v. Ohio, 379 U. S. 89, 85 S. Ct. 223, 13 L. ed. (2d) 142; Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. ed. (2d) 441; McNabb v. United States, 318 U. S. 332, 63 S. Ct. 608, 87 L. ed. 819; Mallory v. United States, 354 U. S. 449, 77 S. Ct. 1356, 1 L. ed. (2d) 1479.

[5]See, Kamisar, *What is an Involuntary Confession?* 17 Rutgers L. Rev. 728.

[6]See, Meltzer, *Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury*, 21 U. of Chi. L. Rev. 317.

sideration, although we may infer from the majority opinion in the Jackson case that this is a permissible procedure so long as voluntariness is first established as a fact and as a condition precedent to the admission in evidence of the confession.[7]

In the case before us, however, we are prevented from determining the Federal constitutional questions raised by two rules of state law long established by the decisions of this court: (1) The admissibility of evidence cannot be questioned for the first time on appeal;[8] and (2) convictions will not be set aside for the trial court's failure to give a cautionary instruction with respect to the evaluation of evidence unless at trial such instruction has been requested or exception taken to the failure of the trial court to give it.[9] In this case, the testimony of the police officers with respect to the admissions made by defendant was received by the trial court without any objection whatever. There was no attempt at trial to urge upon the trial court cautionary instructions with respect to the admissions if considered involuntary by the jury, and there was no exception taken to the instructions as given.

Application of the state rules does not result in a miscarriage of justice in this case. Defendant admitted that he received a sum of money from the woman involved during the early morning hours of February

---

[7]Recent decisions of the United States Supreme Court outlining standards of admissibility of confessions include: Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977; Lynumn v. Illinois, 372 U. S. 528, 83 S. Ct. 917, 9 L. ed. (2d) 922; Haynes v. Washington, 373 U. S. 503, 83 S. Ct. 1336, 10 L. ed. (2d) 513; Culombe v. Connecticut, 367 U. S. 568, 81 S. Ct. 1860, 6 L. ed. (2d) 1037; Rogers v. Richmond, 365 U. S. 534, 81 S. Ct. 735, 5 L. ed. (2d) 760; Spano v. New York, 360 U. S. 315, 79 S. Ct. 1202, 3 L. ed. (2d) 1265.

[8]See, State v. Armstrong, 257 Minn. 295, 101 N. W. (2d) 398; State v. Rosenswieg, 168 Minn. 459, 210 N. W. 403; State v. Pearson, 153 Minn. 32, 189 N. W. 404; State v. Rue, 72 Minn. 296, 75 N. W. 235; State v. Mims, 26 Minn. 183, 2 N. W. 683.

[9]See, State v. Rasmussen, 241 Minn. 310, 63 N. W. (2d) 1; State v. DeZeler, 230 Minn. 39, 41 N. W. (2d) 313, 15 A. L. R. (2d) 1137; State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155; State v. Jenkins, 171 Minn. 173, 213 N. W. 923; State v. Sailor, 130 Minn. 84, 153 N. W. 271; State v. Newman, 127 Minn. 445, 149 N. W. 945.

6, 1963. Under the circumstances disclosed by the record, his assertion that he did not know as a fact that the money received by him represented earnings from prostitution is incredible. There is a clear conflict in the evidence as to whether, in receiving the money, defendant was acting as agent for the woman in order to redeem articles owned by her which had been pawned. He so testified at the time of the trial and a pawn ticket was introduced in evidence in corroboration of this claim. But there was ample evidence on this narrow issue of fact to support a contrary finding on the part of the jury. The admissions made by the defendant do not relate to this aspect of the case. It is understandable that the public defender did not consider it advisable at the time of trial to attribute to these "admissions" the dignity of a confession. And for the trial court to have done so on its own motion was not required, we believe, under the circumstances of this case.

It is our conclusion, therefore, that in light of the well-established principles of state law relating to the procedure to be followed in the trial of criminal cases, reversal of this conviction would not be justified. Upon this ground, and this ground alone, the conviction is affirmed.

Affirmed.