STATE of Minnesota, Respondent,

v.

Daniel H. SKINNER, Appellant.

No. C3–89–988.

Court of Appeals of Minnesota.

Jan. 30, 1990.

Review Denied Feb. 28, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Lisa A. Berg, Asst. County Atty., Minneapolis, for respondent State.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant Skinner.

Considered and decided by KLAPHAKE, P.J., and PARKER and FOLEY, JJ., without oral argument.

## OPINION

FOLEY, Judge.

Daniel H. Skinner appeals from the conviction for first degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subds. 1(a) and 2 (1988), with reference to Minn.Stat. § 609.101 (1988). We affirm.

## FACTS

On May 30, 1988, appellant was arrested following an accusation that he had sexually abused C.A.V., a 10 year old girl. Appellant lived in Minneapolis with his girlfriend and five children. C.A.V. is the daughter of the girlfriend's sister-in-law.

In November 1987, C.A.V. reported that her father had been molesting her and having sexual intercourse with her. In December 1987, the abuse was reported to the authorities. C.A.V.'s father pleaded guilty to the crime and is now in prison.

C.A.V. and her brothers often spent time at appellant's house and stayed overnight with their cousins. They spent Memorial Day weekend of 1988 at appellant's house with their cousins. According to C.A.V., at some point on either Saturday or Sunday, she was sitting on appellant's lap watching television. Appellant's girlfriend and several cousins were gone, and the others were playing outside. Appellant was holding his infant son. C.A.V. testified that

she fell asleep and appellant slipped his hand under her shirt and touched her chest. He also slid his hand under her pants and fondled her genital area. He then took his penis out of his pants and placed her hand on it.

C.A.V. testified that appellant then zipped up his pants and put the baby into his crib. Appellant returned to the living room, picked up C.A.V., took her into a bedroom, and placed her on the bed. C.A.V. felt appellant lie down on top of her, and he again put his hand under her shirt. He then pulled her pants down and penetrated her with his finger and his penis. C.A.V. also testified that he tried to put his penis in her mouth, but she turned her head away. During this time, C.A.V. kept her eyes closed and pretended to be asleep. She testified that appellant got up once to look out the window. He stopped when he heard his girlfriend drive up. He pulled up her pants and left the bedroom.

C.A.V. testified that she ran upstairs to the bathroom. She noticed that her genital area was wet, and she tried to dry the area. She also noticed that her pants were wet and tried to dry them as well.

When she went outside, her brother saw her damp pants and accused her of wetting her pants. C.A.V. replied that she had not wet her pants but that appellant "had did what her dad did." She also testified that she had told her cousins about the incident, but nothing was said to any of the adults. Later that weekend, appellant's girlfriend washed C.A.V.'s clothes.

On Monday evening, C.A.V.'s mother picked up her children from appellant's house. The children bathed when they got home, put on their pajamas, and went into the living room to watch television with their mother. C.A.V.'s brother told her that she should tell their mother what had happened. C.A.V. was reluctant to say anything but eventually said that appellant had sexually abused her.

C.A.V.'s mother then arranged for a neighbor to watch the children, went to pick up her sisters and some friends, and drove to appellant's house to confront him. She testified that she asked him how he could have done the same thing to C.A.V. as her father did. She also said that she had allowed him to get away with something once and that she wasn't going to let him do it again. She further testified that his reply was something like "this is once, when was the second time" or "that was once, this was the second time." Her sister testified that when she asked appellant how he could admit this in front of everyone, he smiled and made no reply.

C.A.V. was taken to Mercy Medical Center for a sexual abuse examination. C.A.V. told Dr. Mark Winholtz and Linda Lohn, a registered nurse, that appellant sexually assaulted her. Dr. Winholtz did a physical examination and found "mild irritation, a little redness and swelling of the vaginal mucuosa" as well as unusual tenderness in that area. He concluded that there had been some recent penetration, but he could not say exactly what had caused the irritation. Samples tested for the presence of sperm were negative. Dr. Garry Peterson, Chief Medical Examiner for Hennepin County, testified that assuming the alleged sexual assault occurred no later than Sunday afternoon, he would not have expected any sperm to still be present in samples taken on Monday night.

Appellant was arrested following the accusations by C.A.V.'s mother and was interviewed at the Hennepin County Jail by Sergeant David Martens on May 31, 1988. Appellant acknowledged there had been times during the weekend when he had been alone with the children, but he denied sexually abusing C.A.V. When Martens asked appellant if he would take a lie detector test, appellant indicated that he would first like to consult with an attorney. At that point, Martens apparently told appellant that he believed that if appellant admitted abusing C.A.V., he was more likely to receive therapy rather than a punitive sanction. Appellant did not respond for approximately 30–45 seconds and then said he simply wanted to get out of jail and get back to work.

Appellant testified at trial in his own behalf. He denied molesting C.A.V. He further indicated, contrary to C.A.V.'s tes-

timony, that the baby did not sleep in a crib and that he wore gym shorts that weekend, not pants with a zipper:

Appellant's girlfriend testified that she was gone from the house for a short time on Saturday, when she and her sister went to pay a bill. She testified that during this time, one of her brothers was at the house with appellant and the children. She also testified that the next day, in the afternoon, she walked into a bedroom and found C.A.V. nude on the bed apparently masturbating. She testified that C.A.V. dressed quickly and left the room. The girlfriend did not mention that incident to C.A.V.'s mother.

According to appellant's girlfriend, C.A.V. acted normally that weekend and when asked if she wanted to go home or spend another night at their house, C.A.V. indicated that she wanted to sleep over for another night.

The girlfriend's mother testified that she had dropped by appellant's house unannounced on Sunday afternoon and that she spoke briefly with appellant. She did not notice anything out of the ordinary. She also testified that appellant was wearing gym shorts that did not have a zipper.

There was also testimony at trial from Dr. Judy Rothenberg, a psychologist who had been counseling C.A.V. in connection with the sexual abuse by her father. Dr. Rothenberg testified that she met with C.A.V. on the Friday before the Memorial Day weekend and again on June 3, 1988. She indicated that C.A.V. seemed withdrawn, resentful, and upset or traumatized in the June 3 meeting. However, she acknowledged that there were other pressures on C.A.V. because the family was being evicted from the home and C.A.V. was concerned about leaving her school and friends. Dr. Rothenberg further testified that it was common in child sexual abuse cases for the victim to pretend to be asleep as she is being abused and that she and C.A.V. had discussed this in prior meetings as an appropriate self defense response in certain situations.

The jury found appellant guilty of first degree criminal sexual conduct. At sentencing, the trial court imposed an upward durational departure from the presumptive sentence of 76 months and imposed a 152 month prison term.

## ISSUES

1. Did the trial court err in denying appellant's motion to suppress?

2. Was the evidence sufficient to support appellant's conviction for first degree criminal sexual conduct?

3. Did the trial court err in permitting use of appellant's prior felony convictions for impeachment purposes?

4. Did the trial court err in imposing a double upward departure from the presumptive sentence?

## ANALYSIS

█ 1. Appellant first argues that the trial court erred in denying defense counsel's motion to suppress evidence of appellant's response to questioning during custodial interrogation after appellant requested an attorney. No objection was made to this particular evidence at the omnibus hearing. However, there was no reason for appellant to challenge his post-*Miranda* silence at the omnibus hearing unless the state gave notice it would use this as a Rasmussen "statement." It is not the obtaining of such "silence" which is objectionable, but its *use*, which would not appear (unless Rasmussen-noticed) until trial. No such notice was given. Ordinarily issues raised for the first time on appeal are not reviewed, but in this case we have determined to do so and our analysis follows.

At trial, during *cross-examination* by the defense counsel, Martens admitted that he had told appellant the courts often gave more lenient sanctions to those who expressed remorse for their conduct. Martens testified that after making those comments, appellant "made no response at all." On redirect examination, Martens testified that appellant was silent for some 30 to 45 seconds and then stated that he wanted to get out and get back to work and keep ahead of himself.

Once *Miranda* warnings have been given, if the individual indicates at any time that he wishes to remain silent, the interrogation must cease until an attorney is present. *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966). *See also State v. Roberts*, 296 Minn. 347, 208 N.W.2d 744 (1973). Here, the further questioning by Martens after appellant requested an attorney was improper. Any error by the trial court in denying the motion to suppress evidence of appellant's response to the questioning, however, was harmless error. Evidence of guilt was strong and was so viewed by the trial court.

We also note that the prosecutor further questioned Martens about the length of appellant's silence and again referred to the silence in his closing argument. Use of a defendant's post-*Miranda* warning silence for impeachment purposes is a violation of due process. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *See also State v. Beck*, 289 Minn. 287, 292, 183 N.W.2d 781, 784 (1971). *However, the testimony regarding appellant's silence first came up at trial in response to a question asked by defense counsel in his cross-examination of the police officer.* While we do not condone the elicitation of matters that could be prejudicial, we believe the introduction of otherwise objectionable evidence by the defense counsel is a distinguishable feature from other cases and does not warrant a reversal. *Cf. State v. Underwood*, 281 N.W.2d 337, 342 (Minn.1979) (comment by prosecution witness on defendant's right to remain silent was held to be prejudicial error although elicited by defense counsel on cross-examination; cumulative effect of errors warranted reversal). Although the obvious inferences to be drawn from Martens' testimony would likely be adverse to appellant, defense counsel opened the door to this questioning and cannot now claim prejudice. *Hanson v. State*, 344 N.W.2d 420, 425 (Minn.Ct.App.1984). It may have been a tactical move by defense counsel.

■ 2. When reviewing a claim of sufficiency of the evidence, we are limited to ascertaining whether, under the facts in the record and the legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn. 1981). The evidence is to be viewed in the light most favorable to the prosecution, and we must assume the jury believed the state's witnesses and did not believe any contradictory evidence. The verdict will be upheld if, giving due regard to the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

Although Minn.Stat. § 609.347, subd. 1 (1988) provides that the testimony of the complainant in a sexual assault case need not be corroborated, the supreme court has indicated that the absence of corroboration in a particular case may require a holding of insufficient evidence. *State v. Ani*, 257 N.W.2d 699, 700 (Minn.1977).

Appellant contends the evidence here is insufficient due to inconsistencies in C.A. V.'s account of what occurred, the lack of corroboration, and the absence of any substantial opportunity on his part to commit the act. He argues that questions about C.A.V.'s credibility are raised by her inability to recall exactly which day the incident occurred. He also refers to her failure to promptly report the incident to an adult. Further, he argues that C.A.V.'s account was contradicted by the testimony from the defense witnesses.

"Credibility determinations and the weight to be given an individual's testimony lie with the jury." *State v. Lau*, 409 N.W.2d 275, 277 (Minn.Ct.App.1987). The jury in this case had the opportunity to assess the credibility of the witnesses, and they chose to reject appellant's version of the events. A "jury is entitled to believe a victim's account of events." *State v. Trotter*, 354 N.W.2d 539, 541 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Dec. 20, 1984). C.A.V.'s testimony is supported by testimony from C.A.V.'s mother and brother, as well as testimony from Dr. Winholtz

and Nurse Lohn. The evidence is sufficient to support the conviction.

■ 3. Appellant next argues that the trial court improperly admitted evidence of his prior felony convictions for impeachment purposes. Appellant has 1978 and 1979 convictions for Unauthorized Use of a Motor Vehicle and a 1980 South Dakota conviction for Grand Theft Auto. On appeal, this court must sustain evidentiary rulings on admissibility of prior convictions unless there has been a clear abuse of discretion. *State v. Brouillette*, 286 N.W.2d 702, 707 (Minn.1979).

Prior felony convictions are admissible for impeachment purposes if the probative value of such evidence outweighs its prejudicial effect. Minn.R.Evid. 609(a)(1). In determining whether the probative value outweighs the prejudicial effect, five factors are to be considered:

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978).

Both parties agree the convictions are within the ten year time limit of the rule, although appellant argues that the convictions are not so close in time to the current incident as to have a significant bearing on truthfulness at trial. However, prior convictions that were eight years old where the defendant had been imprisoned part of that time have been admitted for impeachment purposes. *See State v. Hicks*, 380 N.W.2d 869, 874 (Minn.Ct.App.1986).

The prior convictions here are not similar to the charged crime. The trial court instructed the jury that the previous convictions were to be considered only as affecting credibility, not as evidence of guilt of the offense for which he was on trial. Additionally, the trial court's ruling on the prior convictions did not prevent appellant from testifying at trial. *See State v. Gard-*

*ner*, 328 N.W.2d 159, 161 (Minn.1983) (evidence of prior conviction admitted where conviction was recent, defendant's credibility was a key issue, evidence did not have the effect of keeping defendant's testimony from the jury, and conviction was not for similar offense).

The key issues here are credibility and impeachment value. Prior convictions have legitimate impeachment value because they allow the jury to see "the whole person" and therefore permit the jury to better judge the truth of the defendant's statements. *Brouillette*, 286 N.W.2d at 707. Because it was necessary for the jury to assess the credibility of both C.A.V. and appellant, admitting his prior convictions gave the jury a proper context in which to make that assessment. We find no abuse of discretion in the trial court's ruling.

■ 4. Finally, appellant argues that the trial court erred in imposing a double durational departure from the presumptive sentence.

The presumptive sentence for appellant's first degree criminal sexual conduct conviction was 76 months (severity level VIII, criminal history score 3). The trial court imposed a double durational departure sentence of 152 months, listing the following reasons: vulnerability of the victim; psychological harm; multiple sexual penetrations; defendant's abuse of his position of trust and authority over the victim; and pre-planning.

Appellant argues that the sentence was excessive given the nature of the offense in this case as compared to other cases of criminal sexual conduct involving children. He further argues that the prior felony convictions used to generate his three criminal history points were stale and relatively minor. Appellant admits his criminal history score was calculated correctly under the Sentencing Guidelines in effect at the time of this offense.

In deciding whether to depart from the presumptive sentence, the trial court should:

(1) consider whether any mitigating or aggravating factors are present, (2) de-

termine whether these circumstances are substantial and compelling circumstances justifying departure, and (3) if there are substantial and compelling circumstances, decide whether or not to depart. If the trial court decides to depart, it must make any necessary findings and give reasons justifying its decision so that meaningful review of the departure is possible.

*State v. Leibfried,* 309 N.W.2d 36, 36 (Minn.1981). Further, the trial court should examine whether "defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984).

Although the legislature has considered the age of the victim in distinguishing sex offenses by degree, the court can consider age in connection with other facts in determining if the conduct underlying the offense was sufficiently different from the typical conduct so as to justify an upward departure. *State v. Cermak,* 344 N.W.2d 833, 839 (Minn.1984); *State v. Luna,* 320 N.W.2d 87, 89–90 (Minn.1982).

Here, C.A.V. was 10 years old and appellant was 28. Appellant knew C.A.V. had been sexually abused by her father. Furthermore, her vulnerability was increased because appellant began touching her while she was asleep. *See State v. Gettel,* 404 N.W.2d 902 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. June 26, 1987) (upward departure affirmed, with one reason being the vulnerability of the victim due to the combination of her prior use of alcohol and her sleep state at the time of the defendant's acts).

The fact that a victim needs psychological or psychiatric counseling as a result of a defendant's acts also has been considered as an aggravating factor. *See State v. Norton,* 328 N.W.2d 142, 146 (Minn.1982). Dr. Rothenberg testified that C.A.V.'s attitude had improved since her father's abuse ended and that C.A.V. seemed more withdrawn after the incident, although she also testified that other pressures on C.A.V. might have caused her to be withdrawn. Continuing appointments were scheduled with Dr. Rothenberg.

Multiple penetrations have been used to justify aggravation of a sentence on the grounds that the defendant committed the assault in a particularly serious way. *Ture v. State,* 353 N.W.2d 518, 522 (Minn.1984). C.A.V. testified that appellant put both his finger and his penis into her vagina. She also testified that he put his penis back into her after he tried to put it in her mouth.

Vulnerability due to the victim's trust has been upheld as a sufficient reason for departure. *See State v. Hamilton,* 348 N.W.2d 112, 114 (Minn.Ct.App.1984) (victim trusted her defendant-stepfather enough to go riding alone in a car with him and was raped while she was alone with him). In the present case, appellant was babysitting C.A.V. and was in a position of authority over her at the time of the incident.

We find the sentencing departure justified by the factors relied upon by the trial court.

### DECISION

Affirmed.

KLAPHAKE, Judge (concurring specially).

I concur in the result reached by the majority and likewise would affirm the trial court in all respects. However, I would not reach appellant's pro se claim that the trial court erred in not suppressing appellant's response to Officer Marten's statements after appellant indicated he wanted to talk to a lawyer. The pro se claim here was not raised at either the omnibus hearing or at the trial.

Issues raised for the first time on appeal "are not properly presented under soundly based and settled rules limiting our scope of review to issues raised at trial." *State v. LaBarre,* 292 Minn. 228, 237, 195 N.W.2d 435, 441 (1972) (citing *State v. Taylor,* 270 Minn. 333, 339, 133 N.W.2d 828, 832 (1965)). Accordingly, I would not address appellant's claim.