**STATE of Minnesota, Respondent,**

v.

**David C. HEIDELBERGER, Appellant.**

**No. CX–83–1753.**

Court of Appeals of Minnesota.

July 10, 1984.

Petition for Further Review Denied Sept. 12, 1984.

C. Paul Jones, Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka County Atty., Anoka, for respondent.

Considered and decided by SEDGWICK, P.J., PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

David C. Heidelberger was convicted before a jury of two counts of intrafamilial sexual abuse, two counts of kidnapping and of incest. All the charges arose from his forcible rape of his 16-year-old sister, as a result of which she became pregnant and underwent an abortion.

Appellant's defense was that his sister's charges were a fabrication and that he had an alibi covering the time during which the offense allegedly occurred. He contends that the court's ruling at an omnibus hearing, refusing to suppress evidence of certain statements he made to a police investigator after he had been formally charged, violated his Sixth Amendment right to counsel. He also claims that the trial court erred in ruling that the prosecution could introduce, as impeachment evidence should he testify, his two prior convictions of criminal sexual conduct in the first degree; he alleges that the ruling had a "chilling effect" on his right to testify. Appellant further claims that the evidence was insuf-

ficient to sustain the convictions, that the convictions were duplicatory and that the sentence constituted an impermissible deviation from the Sentencing Guidelines. We affirm in part, vacate in part and modify the sentence.

## ISSUES

1(a). Did appellant forfeit his right to appeal the issue of whether his Sixth Amendment right to counsel was violated when he failed to raise the issue of the admissibility of his statements to police at trial?

(b). Did appellant voluntarily, knowingly and intelligently waive his right to counsel when he made statements to police?

2. Did the trial court abuse its discretion in admitting, for impeachment purposes, appellant's two prior convictions for criminal sexual conduct in the first degree?

3. Was the evidence sufficient, when reviewed in the light most favorable to the State, for the jury to conclude that appellant was guilty of intrafamilial sexual abuse in the third degree, kidnapping and incest?

4. Is incest an included offense of intrafamilial sexual abuse in the third degree?

5. Are there substantial and compelling reasons for departing from the mandatory minimum sentence?

## FACTS

Appellant David Heidelberger appeals his convictions, after a trial by jury, for intrafamilial sexual abuse in the third degree (Minn.Stat. § 609.3643, subd. 1(1), 1(2)(a) (1982)), kidnapping (Minn.Stat. § 609.25, subd. 1(2), 1(3) (1982)), and incest (Minn.Stat. § 609.365 (1982)). He was sentenced to the custody of the Commissioner of Corrections for a term of 108 months.

The charges arose from appellant's kidnapping and sexual assault of his sister, which occurred on a Sunday in late May 1982 between 9:00 a.m. and 11:00 a.m. at the Heidelberger property in rural Anoka County, Minnesota.

The appellant, 41 years old, lived in a trailer house on 1⅓ acres of land on the back end of a 40-acre tract. His sister, 16 years old, lived with her mother in the main house on the front part of the tract.

On the Friday preceding the kidnapping and sexual assault, the victim, her sister and the sister's baby son went to appellant's trailer house to look at toys and clothes appellant had picked up at work. When they arrived, they found him dressed in women's clothes. Appellant begged them to tie him up and spank him. The victim told her brother that he was "crazy, sick" and the sisters and the baby left.

The following Sunday morning, the victim was lying in her bedroom when she heard someone come into the house. She got up and went to the kitchen to see who it was. When she got to the kitchen, she found appellant with a plastic garbage bag in his pocket. There was no one else in the house at the time; her mother was at church. Appellant appeared nervous. While they talked, appellant asked her for some directions. When she pointed with her hand, appellant put a handcuff on her wrist and then asked her for her other hand. She refused and tried to pull away, whereupon appellant punched her in the stomach with his fist. She gave him her other hand and he handcuffed her hands behind her back.

Appellant took the victim into her bedroom, threw her on the bed, removed the garbage bag from his pocket and started to put her clothes in the bag. He told her he was making it look as if she had run away. Appellant said he was doing this because she had made fun of him a couple of days before. He took off her shorts, put a gag in her mouth, blindfolded her and took her outside to his car. As he was putting the clothes in the car, she attempted to run away but he caught her and punched her in the ribs with his fists. He then put her in the trunk of his car, closed the trunk and drove to his trailer house.

When they arrived at his house, he brought her to a pigpen near his trailer and took off her blindfold. Appellant put the

victim in the pen with the pigs and said, "Let them smell you; you deserve to be with the pigs." She was still handcuffed and gagged. Appellant then took her out of the pigpen and brought her into the trailer house. He put her on the living room floor and threatened her with a knife, saying that she was going to die, that he was going to cut her stomach open and feed her to the pigs, or that he would seal her in a 55-gallon drum. She knew that there were such drums in the junkyard on the property. While making these threats, appellant placed the knife under her chin. She was "scared to death."

Appellant removed her underwear, pulled her shirt over her head and raped her on the floor while she was still handcuffed. When the sexual intercourse was finished, the victim asked appellant how he could do such a thing to his sister. Appellant cried and said he was sorry and that if she did not tell anyone she could have anything he had. Appellant gave her her clothes, removed the handcuffs and drove her home. The entire incident lasted between 45 minutes and an hour.

After she returned home, the victim took a bath and burned her clothes because "she never wanted to see them again, they made [her] sick, they were dirty from the pigpen, [she] just didn't want to see them anymore." She did not tell her mother that day about what had happened because "it would hurt her too much." She told her sister and a close friend later that day about what appellant had done to her. She showed the friend the marks on her wrists from the handcuffs.

In mid-June the victim suspected she was pregnant as a result of being raped by appellant. Before she had a pregnancy test, she told the friend and her sister about her suspicions. She also told her older sister that she had been raped by appellant and thought she was pregnant. The older sister then told their mother about the suspected pregnancy. When the victim's mother learned what had happened, she telephoned appellant and said, "your sister told me what you did to her."

Appellant did not respond. Appellant's mother then told him he needed help. Appellant responded that he was getting help.

The victim's mother took her to the Nucleus Clinic for a pregnancy test, where on June 14, 1982, it was confirmed that she was pregnant. She reported that she was pregnant as a result of being raped by a 40-year-old friend of the family, who lived next door. She indicated that her mother had talked to this man and that he was seeing a psychiatrist. The pregnancy was clinically aborted on June 22, 1982. At that time, she was approximately four weeks pregnant.

On January 14, 1983, the victim had her first of approximately 12 conversations with her school counselor. She told him that she had been sexually assaulted by appellant on a Sunday in May. As required by law, he made a report which was sent to law enforcement officials. On March 24, 1983, Lee Ponto, an investigator with the Anoka County Attorney's office, obtained a statement from the victim.

On March 30, 1983, a complaint and warrant for appellant were issued. Appellant was then arrested and a search of his trailer house was conducted pursuant to a search warrant. In the search police seized, among other items, a pair of handcuffs and female clothing. Police also found two gags.

Also on March 30, 1983, Investigator Gary Miller of the Anoka County Attorney's office interviewed appellant after giving him the *Miranda* warning. Investigator Miller then asked appellant if he was willing to talk to him. Appellant agreed to talk to Miller after Miller explained that he wanted to talk about appellant's having sexual intercourse with his sister. Appellant told Miller that it could not have happened because appellant always spent every Saturday and Sunday morning between 9:30 and 11:00 a.m. at the Country Kitchen restaurant in Coon Rapids. The prosecution sought admission of this statement as incriminatory because Miller had not yet told appellant of the time and circumstances of the alleged offense. Appellant denied

any such involvement with his sister and did not testify at trial. The defense called four witnesses who testified that appellant was usually at the Coon Rapids Country Kitchen on Sunday mornings in May 1982.

The court sentenced appellant on the conviction of intrafamilial sexual abuse in the third degree (Count V, Minn.Stat. § 609.-3643, subd. 1(2)(a)) to a term of 108 months, double the mandatory minimum sentence. This appeal followed.

## DISCUSSION

### I

Appellant contends that statements made to the investigator on the day of his arrest were obtained in violation of his Sixth Amendment right to counsel, that it was error to admit them into evidence, and that he should be granted a new trial at which the statements would be suppressed. It is undisputed that the *Miranda* warning was given and that appellant stated he understood his rights. It is also undisputed that appellant's right to counsel had attached at the time he made these "exculpatory" statements and that appellant never requested an attorney before talking to Investigator Miller.

### (a)

■ It has long been established by the Minnesota Supreme Court that the admissibility of evidence cannot be questioned for the first time on appeal. *State v. Taylor*, 270 Minn. 333, 339, 133 N.W.2d 828, 832 (1965). The admission of evidence, even though prejudicial, does not entitle an individual to a new trial where no proper objection was made at trial, even though valid objection to the evidence might have been made on constitutional grounds. *State v. Tahash*, 272 Minn. 539, 550, 141 N.W.2d 3, 11 (1965). The failure to raise an issue at trial constitutes a forfeiture of the right to have a court consider the issue on appeal. *State v. Beard*, 288 N.W.2d 717, 718 (Minn.1980), citing *State v. Kremer*, 307 Minn. 309, 239 N.W.2d 476 (1976). Notwithstanding a failure to object, a court may set aside a conviction and grant a new

trial only when the failure to do so would perpetuate a substantial injustice in the sense that an innocent person may have been convicted. *State v. Beard*, 288 N.W.2d at 718. Courts have looked at whether there was other "ample evidence" of guilt to determine if a substantial injustice has occurred. *See id.; State v. Taylor*, 270 Minn. at 340, 133 N.W.2d at 832.

■ It is undisputed that appellant's counsel did not object to the statements on Sixth Amendment grounds at trial. Furthermore, affirming appellant's convictions would not perpetuate a substantial injustice because there is not merely ample evidence of his guilt, there is overwhelming evidence. The victim's testimony is uncontroverted and corroborated by evidence obtained in a search of appellant's trailer house and the testimony of seven witnesses. The corroboration dispels any notion of fabrication on the part of the victim. Because evidence of appellant's guilt was overwhelming, this is not a case where failure to set aside a conviction would perpetuate a substantial injustice. Therefore, appellant forfeited his right to appeal the issue of whether his Sixth Amendment right to counsel was violated.

### (b)

■ Because a complaint was filed and a warrant issued, appellant's statements to Investigator Miller were made at a time when his Sixth Amendment right to counsel had attached. *See State v. Phelps*, 328 N.W.2d 136, 139 (Minn.1982). However, interrogation after the right to counsel has attached is not prohibited if the individual waives his right to counsel. *See In the Matter of the Welfare of M.A.*, 310 N.W.2d 699, 701 (Minn.1981); *State v. Sufka*, 295 N.W.2d 665, 667 (Minn.1980).

The decisive issue here is by what standard an accused may waive his right to counsel. Appellant urged the court to adopt a per se rule prohibiting the introduction of statements obtained by police after formal charging unless the individual has been afforded consultation with counsel. The Minnesota Supreme Court has specifi-

cally declined to adopt such a per se rule. *Giddings v. State*, 290 N.W.2d 595, 597 n. 3 (Minn.1980).

In a recent decision, the Minnesota Supreme Court set forth the applicable standard. In *State v. Kivimaki*, 345 N.W.2d 759 (Minn.1984), the Court held that the admission into evidence of defendant's confessions to police obtained after he had been charged with first-degree murder did not violate his Sixth Amendment rights. The Court stated that the standard is whether, under the facts of the case, there was a voluntary, knowing and intelligent abandonment or relinquishment of a known right or privilege.

We recognize that different policies underlie the fifth and sixth amendment rights to counsel. But use of the traditional standard for determining waiver does not contravene these policies. Rather, the standard requires courts to closely examine the context of the purported waiver and judge whether the accused was aware of the particular right involved and understood the seriousness of his legal position.

The moment a defendant's sixth amendment right has attached, the prosecution's role shifts from investigator to accuser. Any questioning of an accused is suspect after the State has enough evidence to charge him with a crime. However, *the standard—voluntary, knowing and intelligent abandonment or relinquishment of a known right or privilege—remains the same.* The standard is broad enough to encompass all of the constitutional rights involved when the police elicit incriminating statements from an accused.

*Id.* at 764 (emphasis added). Thus, the validity of a waiver of the Sixth Amendment right to counsel is judged by the same standard as a waiver of the Fifth Amendment right.

In *State v. Linder*, 268 N.W.2d 734 (Minn.1978), the Minnesota Supreme Court outlined the analysis to be followed in determining the waiver issue in the context of the Fifth Amendment.

In an ordinary case if the prosecutor shows that the warning was given and that defendant stated he understood his rights and then gave a statement, the state will be deemed to have met its burden of proof, unless there is other evidence indicating that there was no knowing, intelligent, and voluntary waiver.

*Id.* at 735.

■ In the present case there is no question that appellant was given a *Miranda* warning. Furthermore, appellant stated that he understood each of the rights given by Investigator Miller. Clearly, this testimony satisfies the State's burden of proving appellant's knowing, intelligent and voluntary waiver. There is no other evidence showing that the waiver was not valid.

Therefore, under the standard set forth in *State v. Kivimaki*, appellant validly waived his Sixth Amendment right to counsel and evidence of his exculpatory statements was admissible.

## II

At a pretrial hearing, the court ruled that appellant's two 1978 convictions for criminal sexual conduct in the first degree could not be used as *Spreigl* evidence but could be used for impeachment purposes. Rule 609, Minn.R.Evid., which governs admissibility of prior convictions for impeachment purposes, provides in pertinent part:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

This rule divides convictions into two types: convictions directly involving "dis-

honesty or false statement" and other crimes "punishable by death or imprisonment in excess of one year." In this case, the two prior convictions were for criminal sexual conduct in the first degree, which do not directly involve dishonesty or false statement. Therefore, the prior convictions were admissible for impeachment purposes only if the probative value of admitting the convictions outweighs its prejudicial effect. *See* Committee Comment to Rule 609, Minn.R.Evid.

The Minnesota Supreme Court has listed five factors to consider in determining whether the probative value outweighs the prejudicial effect. They are (1) the impeachment value of the prior conviction; (2) the date of the conviction and defendant's subsequent history; (3) the similarity of the prior conviction with the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *See e.g. State v. Jones,* 271 N.W.2d 534, 538 (Minn.1978); *State v. Bettin,* 295 N.W.2d 542, 546 (Minn.1980). Application of these factors clearly shows that the probative value of allowing the use of the prior convictions for impeachment purposes outweighs its prejudicial effect.

### Impeachment Value of Prior Convictions

In this case the two prior convictions were for criminal sexual conduct in the first degree. Although these convictions do not directly involve any element of truth or veracity, it does not follow that the convictions are devoid of any impeachment value. *See State v. Brouillette,* 286 N.W.2d 702, 707 (Minn.1979). Impeachment by prior convictions aids the jury by allowing it "to see 'the whole person' and thus to judge better the truth of his testimony." *City of St. Paul v. DiBucci,* 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975). This principle was expanded upon by another court as follows:

> The object of a trial is not solely to surround an accused with legal safeguards but also to discover the truth. What a person is often determines whether he should be believed. When a

defendant voluntarily testifies in a criminal case, he asks the jury to accept his word. No sufficient reason appears why the jury should not be informed what sort of person is asking them to take his word. In transactions of everyday life this is probably the first thing that they would wish to know. * * * Lack of trustworthiness may be evinced by his abiding and repeated contempt for laws which he is legally and morally bound to obey * * * though the violations are not concerned solely with crimes involving "dishonesty and false statement."

*State v. Brouillette,* 286 N.W.2d at 707, quoting *State v. Duke,* 100 N.H. 292, 293, 123 A.2d 745, 746 (1956).

Thus, the two prior convictions are probative of appellant's credibility and, had he testified, it would have been necessary for the jury to be made aware of the convictions so that it could see the whole person when evaluating the truthfulness or falsity of appellant's testimony.

### Date of Prior Conviction and Defendant's Subsequent History

In holding that a prior conviction was not stale and could be used for impeachment purposes, the Minnesota Supreme Court in *State v. Bettin,* 295 N.W.2d at 546, stated that "[t]he prior conviction of aggravated rape was four years old but defendant was in prison in the interim between the two offenses so it would seem that the offense had not lost any relevance by the passage of time." Appellant's two convictions occurred in 1978. He was incarcerated until 1981, when he was paroled. The present offenses occurred in 1982. At the time of trial, appellant's convictions were approximately four years old. In light of *State v. Bettin,* appellant's two prior convictions had "not lost any relevance by the passage of time."

### Similarity of Prior Conviction with the Charged Crimes

One factor weighing against use of the prior convictions is that they are similar to one of the crimes with which appellant was

charged. Appellant's prior convictions were for criminal sexual conduct in the first degree, while here he was charged with intrafamilial sexual abuse in the third degree. The danger in admitting the past crime when it is similar to the charged crime is that the likelihood is increased that the jury will use the evidence substantively rather than merely for impeachment purposes. *Id.* at 546.

Notwithstanding the concern for such misuse, the Minnesota Supreme Court has affirmed trial court decisions allowing use of prior sex offense convictions for impeachment purposes when the crime charged was also a sex offense. *See e.g. State v. Bettin* (use of prior rape conviction when the offense charged was criminal sexual conduct in the third degree); *State v. Brouillette* (use of prior conviction for criminal sexual conduct in the third degree when the offense charged was criminal sexual conduct in the fourth degree); *State v. Reinke*, 343 N.W.2d 660 (Minn.1984) (use of prior conviction for criminal sexual conduct in the fourth degree when the offense charged was criminal sexual conduct in the first degree). The Minnesota Supreme Court, in recognizing that the potential for misuse can be minimized in these situations, stated:

> * * * [A] cautionary instruction would presumably have been given which directs the jury to consider the prior conviction only as it relates to defendant's credibility. *See* CRIM JIG 3.12. Such an instruction adequately protects defendant against the possibility that the jury would convict him on the basis of his character rather than his guilt.

*State v. Brouillette*, 286 N.W.2d at 708.

A cautionary instruction would have adequately protected appellant in the present case, had he testified at trial.

### Importance of Defendant's Testimony

The court may exclude a prior conviction if it determines that its admission for impeachment purposes would cause the defendant not to testify and if it is more important for the jury to hear defendant's version of the case. *See Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967). Although appellant did not testify, his version of the case was presented to the jury. His defense consisted of basically two theories: (1) that the victim fabricated the whole story; and (2) he was somewhere else at the time the offense was said to have occurred. The defense of fabrication was presented to the jury through the cross-examination of the victim. There was no offer of proof that appellant had anything to say concerning the alleged fabrication. Appellant's other defense was presented to the jury through the testimony of four alibi witnesses.

Appellant argues that his testimony at trial would have been important because he could have explained evidence the State used against him. He contends that he could have explained his silence when his mother accused him of the rape and his knowledge of the allegations before police informed him of them. Evidence of appellant's telephone conversation with his mother was attacked on cross-examination of the witness and in defense counsel's closing argument. Furthermore, appellant concedes that his exculpatory statements to Investigator Miller were not significant.

Appellant's version was put before the jury and was argued by his counsel. The contention that appellant was not able to get his version before the jury is not shown.

### Centrality of the Credibility Issue

Generally, if the defendant's credibility is the central issue in the case—that is, if the issue for the jury narrows to a choice between defendant's credibility and that of one other person—then a greater case can be made for admitting the impeachment evidence because the need for the evidence is greater. *State v. Bettin*, 295 N.W.2d at 546.

In view of appellant's claim that the victim fabricated her story and that he was somewhere else when the offense was said to have occurred, the jury would have had to decide whether to believe appellant's tes-

timony or the complainant's. Thus, there was a strong need for evidence of the prior convictions for impeachment purposes.

The trial court carefully considered whether the probative value outweighed its prejudicial effect and ruled that the prior convictions were admissible for impeachment purposes. Examination of the five factors reveals that there was no abuse of discretion, and the ruling should be upheld.

## III

 In reviewing a claim of insufficiency of the evidence, an appellate court is limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Whelan,* 291 Minn. 83, 85, 189 N.W.2d 170, 172 (1971); *State v. Norgaard,* 272 Minn. 48, 52, 136 N.W.2d 628, 631–32 (1965).

The evidence, when viewed most favorably to support a finding of guilty, was sufficient to permit the jurors to reach the conclusion that appellant was guilty.

## IV

██ Appellant contends that one of the two convictions for intrafamilial sexual abuse in the third degree and one of the two kidnapping convictions should be vacated. The State concedes that under the principles embodied in Minn.Stat. § 609.04 (1982) and expressed in case law, one of the two kidnapping convictions and one of the two convictions for intrafamilial sexual abuse in the third degree should be vacated. *See State v. Koonsman,* 281 N.W.2d 487 (Minn.1979).

Appellant also contends that incest is an included offense of intrafamilial sexual abuse in the third degree and that he is entitled to have that conviction vacated. We agree. It is clear from the statutes that intrafamilial sexual abuse in the third degree requires proof of facts which would prove incest:

**609.3643. INTRAFAMILIAL SEXUAL ABUSE IN THE THIRD DEGREE.**

Subdivision 1. Crime defined. A person is guilty of intrafamilial sexual abuse in the third degree if:

(1) He has a familial relationship to and engages in sexual penetration with a minor; or

(2) He has a familial relationship to and engages in sexual penetration with a minor and:

(a) the actor or an accomplice used force or coercion to accomplish the penetration;

(b) the actor or accomplice was armed with a dangerous weapon or any article used or fashioned in a manner to lead the complainant to reasonably believe it could be a dangerous weapon and used or threatened to use the dangerous weapon;

(c) circumstances existed at the time of the act to cause the complainant to have a reasonable fear of imminent great bodily harm to the complainant or another;

(d) the complainant suffered personal injury; or

(e) the intrafamilial sexual abuse involved multiple acts committed over an extended period of time.

**609.365. INCEST**

Whoever has sexual intercourse with another nearer of kin to him than first cousin, computed by rules of the civil law, whether of the half or the whole blood, with knowledge of the relationship, is guilty of incest and may be sentenced to imprisonment for not more than ten years.

Under the test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), proof of incest does not require proof of any element not necessary to establish a case of intrafamilial sexual abuse in the third degree. Incest is subsumed in the broader concept of intrafamilial sexual abuse.

**592**

## V

 Appellant was sentenced on one count of intrafamilial sexual abuse in the third degree to a 108-month term, which was a departure from the 54-month minimum term mandated by Minn.Stat. § 609.-346 (1982). Appellant contends that the departure was not justified or that even if a departure were justified, the term of 108 months is excessive.

In departing from the Guidelines when sentencing appellant, the trial court set forth the following reasons:

(1) The victim was treated with particular cruelty, for which the offender should be held responsible; and

(2) The current conviction is for an offense in which the victim was injured and there is a prior felony conviction for which the victim was injured.

It is not necessary to repeat the details of appellant's outrageous treatment of the victim. A qualitative assessment of appellant's conduct supports the conclusion that there were substantial and compelling factors which distinguish this case sufficiently from other intrafamilial sexual abuse cases to justify departure from the presumptive sentence. *See e.g. State v. Profit*, 323 N.W.2d 34, 36 (Minn.1982).

At the time of sentencing, the trial court properly exercised its discretion in doubling the mandatory minimum sentence of 54 months and sentencing appellant to 108 months. *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981).

However, appellant is entitled to benefit from the November 1, 1983, Guidelines changes pursuant to Minn.Stat. § 244.09, subd. 11 (1983 Supp.). Under the new Guidelines, the presumptive range for a person in appellant's situation (severity level of 7, criminal history score of 3) is 45–53 months. Thus, the maximum sentence a court could impose under the new Guidelines would be 53 months without departure. The maximum sentence with departure and without violating the doubling rule of *Evans* would be 106 months.

## DECISION

Appellant's convictions of one count of intrafamilial sexual abuse in the third degree and one count of kidnapping are affirmed. Appellant's incest conviction is vacated because incest is an included offense of intrafamilial sexual abuse in the third degree. Finally, the particularly cruel manner in which appellant committed the offense justified the trial court's decision to double the mandatory minimum sentence. However, the sentence is modified to 106 months under the new Sentencing Guidelines.

Affirmed in part, vacated in part, modified in part.