**STATE of Minnesota, Respondent,**

v.

**Wesley N. BANKS, Appellant.**

**No. C1–85–396.**

Court of Appeals of Minnesota.

Dec. 17, 1985.

Review Denied Feb. 14, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert F. Carolan, Dakota Co. Atty., Mark Lystig, Asst. Dakota Co. Atty., Hastings, for respondent.

John F. Markert, Bloomington, for appellant.

Heard, considered and decided by RANDALL, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

RANDALL, Judge.

Wesley Banks appeals from a judgment of conviction entered November 27, 1984, following a trial and a jury verdict finding Banks guilty of aggravated robbery under Minn.Stat. §§ 609.245 (1984), 609.11, subd. 4 (1984) (use of dangerous weapon), 609.11 subd. 5 (1984) (use of firearm). We affirm.

## FACTS

Jodi Hetherington, Larry Hoyt, and Scott Hayes were robbed at their home at gunpoint on March 13, 1984.

At 9:30 p.m. Hetherington answered a knock at the door. Two men stood outside the door asking for Hayes. Hetherington told the men that they would have to use a side entrance to reach Hayes' basement apartment. One of the men grabbed Hetherington, placed a gun to her head, and both men entered the house. Upon entering the house, the two men put on ski masks. They proceeded to Hayes' basement apartment via the inside stairs, used their guns to force Hetherington and Hayes to lie on the floor, and taped Hetherington's and Hayes' legs. One man brought Hoyt upstairs at gunpoint. The men took cash and several items of value. One man hit Hoyt in the head with the butt of his gun.

Hetherington was the only victim to observe the robbers without their ski masks. She described one robber as a taller white man with dark hair and described the other as a shorter white man with blonde hair. Hetherington consistently told investigators that the blonde was approximately 5'4" tall.

One week after the robbery, Hetherington viewed a six-picture photo lineup of blonde, white men. The display did not contain a picture of Banks. Hetherington did not identify any photograph as that of either robber. Hetherington viewed a second photo lineup of blondes on April 3, 1984, and identified Banks as one of the robbers. At this time she stated: "I am

almost or at least 50% sure that this fellow could be him."

After this identification, Hetherington asked to view the photos again. A detective showed her the same photos, but in a different order. She identified Banks at this third photographic lineup, and stated that she wanted to see the photos this second time because they only showed the men from the waist up, and she wanted to see a full view to eliminate uncertainty. On April 12, 1984, Hetherington identified Banks at an in-person lineup consisting of eight blonde white men. Bank's attorney was not present at this identification.

Banks is blonde and 5' 11 ¾" tall. At trial, Hetherington explained her original description of the blonde robber as 5'4" by stating that when she initially observed the blonde he stood on the steps outside the front door, which is approximately six inches lower than the entryway inside the house where she stood.

Hoyt is familiar with guns. He described the gun carried by one robber as a .22 caliber clip-fed gun with a long barrel (probably between ten and twelve inches) and a home-made appearing wooden grip perpendicular to the gun. Hoyt called the gun "very unusual." He thought that it was some sort of target pistol because of its long barrel. A detective learned from an informant, who has never been identified, that a man named Wes who lived at Banks' address, owned such a gun.

A valid search warrant was executed at Banks' house. Law enforcement officers recovered a section of cut off rifle barrel, an ammunition clip, a five-inch section of .22 rifle barrel, a clip designed for fully automatic firing, a Ruger model 10/22 carbine instruction manual, and a wooden pistol grip.

Sometime between Banks' arrest and trial, a detective obtained an AR–7 rifle. He showed it to Hoyt, and Hoyt identified it as similar to the gun used in the robbery.

## ISSUES

1. Did the trial court err in allowing Hetherington's in-court identification of Banks?

2. Was Banks denied his constitutional right to trial by an impartial jury due to actions of a spectator in the courtroom?

3. Did the trial court err in admitting certain gun-related testimony and exhibits of guns and gun parts?

4. Did sufficient evidence support the jury's verdict of guilty?

5. Was appellant denied effective assistance of counsel in violation of his constitutional rights to an attorney?

## ANALYSIS

### I.

**Identification testimony**

█ Banks claims that the trial court erred in allowing Hetherington's in-court identification of Banks. No counsel was present at the corporal lineup at which Hetherington identified Banks. The Sixth Amendment to the United States Constitution requires that defendant's counsel be present at lineups, absent an intelligent waiver. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The lineup took place before Banks was formally charged with robbery. A defendant has no sixth amendment right to counsel at a lineup held before being formally charged with a crime. *State v. Hyvare*, 354 N.W.2d 835 (Minn.1984), *citing Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Here, the corporal lineup took place before Banks was formally charged with the robbery, and therefore his sixth amendment rights were not violated.

### II.

**Impartial jury**

Banks claims that he was denied his constitutional right to trial by an impartial jury due to actions of a spectator in the courtroom.

After the verdict was delivered, the jurors asked to speak with the judge. The judge did not advise counsel of the request and counsel were not present. The proceedings were recorded. Two jurors summarized their concerns as follows:

[T.W.]: [T]he concern is voiced over gestures that were made during the trial by a member of the audience. That was—I believe her name was Katy. Couple of times she put her finger up against her head and go like this (gesturing) at people that were testifying and looking at us. And it was like she was trying to warn us that if we found Wes guilty, that we would be in trouble, you know, and stuff like that. And justifiably some of the women, and even myself, I guess, last night were rather concerned about that, that she does something like that.

THE COURT: Well, anybody else?

[M.C.]: We also wondered if there would be any way for any of those suspects and friends to find our names and addresses or be able to?

The remaining discussion concerned juror's fears of retaliation and what they should do if they received threatening telephone calls or other reprisals. The jurors did not discuss any influence the spectator's actions might have had on their deliberations.

█ Neither one of Banks' attorneys ever requested a *Schwartz* hearing to determine whether the spectator's actions prevented a fair trial. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960); Minn.R. Crim.P. 26.03, subd. 19(6). In *Pomani v. Underwood*, 365 N.W.2d 286, 290 (Minn.Ct. App.1985), a civil case, this court discussed the necessity of holding a *Schwartz* hearing:

If a party fails to request a *Schwartz* hearing after becoming aware of facts indicating potential misconduct, the issue will not be considered in a motion for a new trial or, therefore, on appeal. *See Zimmerman v. Witte Transportation Co.*, 259 N.W.2d 260, 262 (Minn.1977).

Similar considerations apply in criminal cases, and we hold that in the absence of a *Schwartz* hearing we cannot consider the effect of the spectator's actions on the impartiality of the jury. This court cannot

evaluate on appeal the impartiality of a jury verdict without an adequate record. Based on the facts of this case, the *Schwartz* hearing, with input from the jurors on the issue of whether their verdict was tainted, would be needed for meaningful appellate review. *See Sievert v. La-Marca,* 367 N.W.2d 580, 586 (Minn.Ct.App. 1985) *pet. for rev. denied* (Minn. July 17, 1985).

■ Banks claims that the judge's post-verdict discussion with the jury was a *Schwartz* hearing. We disagree. The discussion did not concern the influence of the spectator on the jury's verdict and impartiality. The trial court did not inquire into what exactly happened in the courtroom or into what influence this did or did not have on the jury. The jurors discussed concerns for their personal safety, not their deliberations.

Appellant claims that he could not have moved for and obtained a *Schwartz* hearing because he did not learn of the spectator's actions until the transcript was created. However, the record discloses that all of Banks' attorneys were aware of the actions no later than November 13, 1984.[1] "The time that a verdict loser should approach the court to request a *Schwartz* hearing should be when the first suspicion of misconduct arises." *Olberg v. Minneapolis Gas Company,* 291 Minn. 334, 343, 191 N.W.2d 418, 424 (1971); *see also State v. Henderson,* 355 N.W.2d 484, 485 (Minn. Ct.App.1984).

■ Banks claims that his sixth amendment right to counsel was violated when the trial judge spoke with the jury without his counsel present. We agree that the better practice would have been for the judge to advise both attorneys immediately of what the jurors brought to his attention. It involved a serious matter and allegations central to the concept of a fair and impartial jury. However, the verdict had been delivered and the trial was concluded when the jurors approached the judge. The jurors neither raised any questions about the propriety of their verdict nor indicated in any way that their verdict was affected. They merely related to the judge their observations of certain body movements by a friend of the appellant and expressed possible concerns. It was not reversible error for the court not to locate both attorneys immediately and include them in on the conversation.

### III.

#### Gun-related testimony

■ Banks claims that the trial court erred in admitting AR–7 related testimony and exhibits of guns and gun parts. The trial court admitted into evidence various gun parts found at Banks' residence and an AR–7 gun used for demonstrative purposes. Various witnesses testified about the exhibits. Banks' attorney did not object to the admission of any of this evidence. Generally, failure to object to evidence at trial precludes raising the issue on appeal unless substantial and fundamental rights of the accused would be affected. *State ex rel Rasmussen v. Tahash,* 272 Minn. 539, 550, 141 N.W.2d 3, 11 (1966). We decline to find error on the part of the trial court.

### IV.

#### Sufficiency of the evidence

Banks claims that insufficient evidence supports the jury's verdict of guilty. We must review the evidence in the light most favorable to the jury verdict of guilty. *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984); *State v. Heidelberger,* 353 N.W.2d 582, 591 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984).

■ Neither party disputes that two men with guns robbed the victims. The only question is whether or not Banks was one of them. Hetherington identified Banks, and her in-court identification was properly allowed. The totality of the evidence supports the jury verdict.

---

**1.** An affidavit of Banks' trial counsel, filed with the motion for a new trial made by Banks' counsel on appeal, indicates that the prosecutor told trial counsel of the spectator's actions.

## V.

### Ineffective assistance of counsel

Banks claims that he was given ineffective assistance of counsel in violation of his constitutional right to an attorney. He claims that his privately retained trial attorney was ineffective because he failed to attempt to exclude Hetherington's identification testimony, failed to object to certain hearsay testimony, failed to request sequestration of witnesses, failed to object to the State's leading questions, failed to object to the State's impeachment of one of its own witnesses, failed to object to certain allegedly prejudicial gun-related testimony, and failed to deliver two exhibits to the jury.

After the trial, defendant's attorney inadvertently retained in his file two exhibits admitted into evidence. When he got home, the clerk called him to advise that one of the exhibits was missing. He returned the exhibit to someone at the courthouse. The jury received the exhibits five hours after deliberations began. Approximately one hour later, the jury gave its signed and sealed verdict.

Some days after the verdict, a clerk noticed that the other exhibit was missing. The exhibits both corroborate the alibi testimony of the only witness who was not a friend of Banks. One was a contract for deed which the witness remembered recording two days after she claims she spoke to Banks on the telephone at the time of the robbery. The other exhibit was a calendar indicating the arrival and departure of a friend from out of town to whom she spoke by telephone just before she called Banks. The record does not indicate which exhibit got to the jury late and which never got to them.

Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) a convicted defendant must show (1) deficient performance of counsel, and (2) that the deficient performance prejudiced the defense. A convicted defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* 104 S.Ct. at 2066. With regard to prejudice,

[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 2068.

Here, counsel was deficient in retaining the exhibits. The question is whether, had this deficiency not occurred, there exists a substantial likelihood that the verdict would have been different. We do not find that.

The jury obviously did not believe Banks' alibi. Banks claimed that he was at home 27 miles away, and on the telephone with friends at the time of the robbery. His roommate corroborated his story, as did several friends who allegedly either spoke with him on the telephone or heard others speak to him.

■ Banks has not shown that but for the missing exhibits he would have been acquitted. The exhibits were just devices which corroborated an alibi witness's testimony. Banks had several other alibi witnesses, and the alibi witness in question was not inherently untrustworthy or incredible without the corroborating exhibits. Appellant has not shown that his trial counsel's performance prejudiced him as required by *Strickland.*

The other claimed failures are allegations concerning the soundness of defense counsel's trial tactics and courtroom maneuvers. Appellant has not explained how the alleged deficiencies probably resulted in his conviction.

Neither does the record reveal why Banks' attorney did and did not do certain things.

The Minnesota Supreme Court has repeatedly said that an appeal from a judgment of conviction is not the most appropriate way of raising an issue concerning

**174**

the effectiveness of the trial counsel's representation because the reviewing court does not have the benefit of all the facts concerning why defense counsel did or did not do certain things. This issue is more effectively presented in a post-conviction proceeding under Minn.Stat. §§ 590.01–.06 (1984).

*State v. Hanson,* 366 N.W.2d 377, 379 (Minn.Ct.App.1985) (citations omitted). Although some aspects of the claimed ineffectiveness appear from the record, this court does not have the benefit of the trial attorney's explanation of his actions. Although a claim of ineffective assistance of counsel may be brought on direct appeal, the record we have does not show that appellant's counsel was so ineffective that appellant was effectively denied the right to legal assistance.

The more appropriate way to raise this claim is by taking advantage of the post-conviction proceeding. *See State v. Schaefer,* 374 N.W.2d 199, 201 (Minn.Ct.App. 1985) ("Post-conviction proceedings are the proper forum for presentation of matters not of record supporting withdrawal of a guilty plea [due to ineffective assistance of counsel].") (citations omitted).

### DECISION

The trial court did not err in allowing one of the victims to identify appellant at trial.

We cannot review appellant's claim that a spectator's actions denied him his constitutional right to a trial by an impartial jury because appellant did not request a *Schwartz* hearing before the trial court.

Appellant did not object to the admission of gun-related testimony and evidence and therefore has not preserved this issue for appeal.

Sufficient evidence supports the jury's verdict of guilty of aggravated robbery.

The record does not show that appellant was given ineffective assistance of counsel.

Affirmed.