STATE of Minnesota, Respondent,

v.

Emmett M. PERKINS, Appellant.

No. CX–86–312.

Court of Appeals of Minnesota.

Nov. 10, 1986.

C. Paul Jones, Minnesota Public Defender, Steven P. Russett, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING, and CRIPPEN, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Emmett Perkins appeals his conviction for fourth-degree criminal sexual conduct. We affirm.

## FACTS

Emmett M. Perkins is 54 years old and, at the time of this incident, lived in Minne-

apolis with his third wife and two daughters, ages 7 and 13. Perkins also has two sons, Craig, 17, and Shawn, 20.

In January 1984 Shawn moved in with Perkins. Craig was also living at home, and Perkins' stepson, Raymond Davis, and his 18–year–old girlfriend, A.O., moved to Perkins' house later in the year.

On September 12, 1984, Perkins' children and approximately 12 friends had a party. Perkins spent the evening drinking at a local bar. When he returned home, he retrieved a bottle of vodka from inside the house and joined a group of teenagers in a van parked in front of the house. He had three more drinks before going to bed.

The party lasted through the night into the late morning hours. Shawn's girlfriend, S.L.M., who had been to the Perkins home on one other occasion, arrived at about 9 p.m. and drank approximately nine beers between 10 p.m. and 6 a.m. Shawn drank about 20 beers over the same time period.

Sometime between 4 and 6 a.m. on September 13, S.L.M. went upstairs to Shawn's bedroom. Shawn joined her in bed and they had sexual intercourse before falling asleep.

Perkins testified he was not comfortable with his sons living at home because they were disrupting the household and the neighborhood by keeping late hours and partying with friends. Perkins had evicted Craig once before, but he had returned to the house. Frustrated at his failed attempts to remove his sons from the house, Perkins said he decided to "scare" their girlfriends from the house so the boys would also leave.

Perkins got up and entered the room where Shawn and S.L.M. were sleeping. He claims he was wearing a robe, but other evidence indicates he was nude. He knelt on the bed, leaning over S.L.M. and positioning his knees between her legs with his hands on either side of her. A blanket was partially between them. S.L.M. testified that she woke up and found Perkins naked, engaging in sexual intercourse with her.

She began crying and tried to push him off, but couldn't. Shawn was eventually awakened by S.L.M.'s screams and a tap on his shoulder. Shawn saw his father nude, with an erection, on top of S.L.M. He asked Perkins to get off her. Perkins refused to move until both Shawn and S.L.M. promised not to tell anyone of the incident. After he had obtained the promise, Perkins left the room, saying "that's what you get for sleeping here naked under my roof." S.L.M. then got up, dressed and went to a friend's house. S.L.M. did not directly contact the police about the incident. Five days after the party, a friend reported the incident to police.

Perkins evicted both his son Shawn and his stepson Raymond after the party. Neither had a place to go and they moved into their vehicles. In retaliation, Shawn vandalized Perkins' truck. Perkins claims that his decision to report Shawn's vandalism caused the allegations of criminal sexual conduct.

The police arrested Perkins in his home without a warrant and charged him with third-degree criminal sexual conduct (sexual penetration). In exchange for Perkins' waiver of his right to a jury trial, the State reduced the charges against him to fourth-degree criminal sexual conduct (sexual contact).

On the same morning and shortly after the incident with S.L.M., Perkins tried to engage in sexual activity with Raymond's girlfriend, A.O. In that encounter Perkins entered her bedroom after having sent his son Raymond on an errand to Target. He sat on her bed and asked her to have an affair with him. He slipped his hands under the blankets and touched the robe covering her inner thigh. A.O. rebuffed his advances, and Perkins left. The next day Perkins asked if she had reconsidered; she told him she had not, the matter was dropped, and Perkins subsequently evicted Raymond. A.O. did not bring charges against Perkins, but testified to this incident at trial.

Perkins testified on his own behalf and denied any form of sexual contact with

either S.L.M. or A.O. He testified that his only motive was to scare the girls so his older son and stepson would leave the house.

## ISSUES

1. Was the evidence sufficient to support a conviction for fourth-degree criminal sexual conduct?

2. Did the illegal warrantless arrest of appellant in his home preclude prosecution of Perkins for the present offense?

## ANALYSIS

### I

Perkins contends the evidence against him is insufficient to sustain his conviction of fourth-degree criminal sexual conduct. Minn.Stat. § 609.345, subd. 1(d) (Supp. 1985), provides:

A person is guilty of criminal sexual conduct in the fourth degree if he engages in sexual contact with another person and if any of the following circumstances exists:

\* \* \* \* \* \*

(d) the actor knows or has reason to know that the complainant is mentally impaired, mentally incapacitated, or physically helpless.

The definition of "physically helpless" includes a person who is asleep or unconscious. Minn.Stat. § 609.341, subd. 9. Sexual contact is defined as

any \* \* \* acts committed without the complainant's consent, for the purpose of satisfying the actor's sexual or aggressive impulses [including] \* \* \*

(i) the intentional touching by the actor of the complainant's intimate parts \* \* \*, or

(iv) in any of the cases above, of the clothing covering the immediate area of the intimate parts.

Minn.Stat. § 609.341, subd. 11 (1984).

■ The record supports Perkins' conviction. No one disputes that S.L.M. was asleep when the encounter began, which means she was physically helpless by statu-

tory definition. Minn.Stat. § 609.341, subd. 9. S.L.M.'s testimony, if believed, is sufficient to establish beyond a reasonable doubt the element of sexual contact. Perkins contends that S.L.M.'s testimony is inherently unreliable and requires corroboration. *See State v. Ani,* 257 N.W.2d 699, 700 (Minn.1977). The need for corroborating evidence in prosecutions for criminal sexual conduct has been specifically eliminated by statute. Minn.Stat. § 609.347, subd. 1. The trial court succinctly stated the basis for its determinatiõns, including credibility. The trial court had before it evidence of the amount and effect of each witness' drinking, including Perkins'. The trial judge accepted S.L.M.'s testimony, and we find nothing which creates an inherent unreliability.

S.L.M.'s testimony was also supported by the testimony of Perkins' son Shawn, who was in the same bed during the incident. The trial court's findings are fully supported by the record.

■ The trial court admitted A.O.'s testimony that Perkins made sexual advances to her on the same morning. Perkins argues that this *Spreigl* evidence should not have been admitted because it was prejudicial and only minimally probative. The trial court stated that the testimony was not necessary to find Perkins guilty beyond a reasonable doubt, but that it buttressed the case against Perkins. We agree. The factual similarity to the incident with S.L.M. is telling; both victims were vulnerable teenage girls who were guests in Perkins' house, and both were subjected to his sexually motivated advances within a few hours of each other. Admission of this testimony was not an abuse of discretion. *State v. Campbell,* 367 N.W.2d 454, 460 (Minn.1985). In addition, Perkins' own testimonial credibility was undermined by his prior forgery conviction for cashing his dead mother's social security checks.

Viewing the evidence in the light most favorable to the verdict, *State v. Daniels,* 332 N.W.2d 172, 180 (Minn.1983), we find there was sufficient evidence to convict

Perkins for fourth-degree criminal sexual conduct.

## II

 Perkins' claim of immunity from prosecution because of his warrantless arrest is without merit. It has been made clear that, absent exigent circumstances, a person may not be arrested in their home without a warrant. *Payton v. New York*, 445 U.S. 573, 585–86, 100 S.Ct. 1371, 1379–80, 63 L.Ed.2d 639 (1980). Further, any evidence seized as a result of an illegal arrest is inadmissible later at trial. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). In this case, however, no evidence other than Perkins himself was seized during the arrest. A person cannot claim their body as suppressible evidence arising from an illegal arrest. *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980).

There is no constitutional barrier to a prosecution initiated by an unlawful arrest. A defendant "cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense of a valid conviction." *Crews*, 445 U.S. at 474, 100 S.Ct. at 1251.

### DECISION

Affirmed.