STATE of Minnesota, Respondent,

v.

Raymond Arthur CASE, Jr., Appellant.

No. C6–86–2168.

Court of Appeals of Minnesota.

Sept. 8, 1987.

Review Denied Oct. 28, 1987.

C. Paul Jones, State Public Defender, Michael F. Cromett, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Alan L. Mitchell, St. Louis Co. Atty., Vernon D. Swanum, Asst. Co. Atty., Duluth, for respondent.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Raymond Case Jr. appeals his conviction for first-degree assault, claiming he was illegally arrested, the trial court erred by ruling the state could impeach him with prior convictions, and the evidence was insufficient to support his conviction. Case also challenges the denial of his motion to dismiss his court-appointed attorney and the constitutionality of Minn.R.Crim.P. 11.-03 for determining probable cause. We affirm.

## FACTS

Raymond Case and Ellis Daniel spent the evening of August 30, 1986, at a keg party in Duluth. They drank late into the night, fell asleep and resumed drinking the next morning. After they finished the keg, they decided to get more beer and walked to Dale Goldberg's, a friend of Daniel's, to borrow his truck.

Goldberg was in the process of moving from his apartment and had backed his pickup truck up to his front steps. The tailgate was removed and the pickup was almost fully loaded. Goldberg told Case and Daniel they could not use the truck. Case and Daniel remained at Goldberg's apartment and drank some of Goldberg's beer while he finished loading the truck. Goldberg had also been drinking for several hours.

As Goldberg finished loading and prepared to leave, Case, who had been sitting on the front steps with his feet on the back bumper, apparently took Goldberg's leather jacket from the rear of the truck.

Goldberg got out of the cab and walked back to where Case was standing. He stepped up on the truck bumper, grabbed the jacket from Case and asked him if he was trying to steal his leather. According to Daniel, Case stood up and struck Goldberg in the head with his left fist, stunning him. He waited a few seconds and struck Goldberg again. Goldberg, who appeared to be hurt, stepped off the bumper onto the yard. Case took a few steps toward him and proceeded to land a roundhouse left to Goldberg's jaw and cheek area. Goldberg fell backward and hit his head on the sidewalk. He went into convulsions at the impact, then went still.

Case vanished shortly after Goldberg fell. Onlookers called an ambulance and by the time it arrived, Goldberg had lapsed into a coma. Paramedics took him to St. Luke's Hospital, where he underwent emergency intercranial surgery to stop the internal bleeding. His blood alcohol content was .312 and he had a small cut on his lower right lip. Goldberg's condition stabilized after surgery, but he did not remember anything between loading the truck and waking up in the hospital.

Although Case did not testify at the trial, he denied responsibility for Goldberg's injuries, claiming Goldberg tripped and fell over the removed tailgate and, alternatively, that Goldberg attacked him first and the punches were in self-defense.

Four people witnessed the assault. The primary witness, Ellis Daniel, initially told police and paramedics that Goldberg hit his head after tripping over the truck tailgate lying on the lawn. However, after visiting Goldberg in the hospital and observing his condition, Daniel called the police and told them that Case caused the injuries, which was consistent with his later testimony at trial. He testified that he fabricated the earlier story because he did not want to appear "like a snitch" in front of his friends.

Linda Lucia, a friend of Goldberg's who was helping him move, testified that Goldberg got out of the truck as they were preparing to leave and went to the back of

the truck, where lots of yelling occurred. The next thing she saw was Goldberg lying with his head on the sidewalk. She asked Case why he had hit Goldberg and he said, "Because he was fucking with me." Lucia also told police that Goldberg had tripped over the tailgate, but corroborated Daniel's account of the assault at trial.

Richard Mason, who observed the incident from inside the apartment, testified that he looked through the picture window and saw Case slug Goldberg. He could not see the truck tailgate on the lawn from where he stood. Marcella Johns, who was on the roof of the building next door, told police she saw Goldberg get slugged and fall over backward onto the sidewalk. She did not testify at trial.

After reporting the assault, Daniel identified Case from a photo lineup. Duluth police issued a complaint against Case on September 2, 1986, and notified Minneapolis police of an outstanding warrant for Case's arrest. A formal arrest warrant was never issued. Minneapolis police learned Case was staying at a friend's house in Champlin, Minnesota, and on September 23, 1986, arrested him without incident. He was taken to the Hennepin County jail and brought before the St. Louis County District Court on September 26, 1986.

At the omnibus hearing Case raised several objections to his arrest and moved to dismiss the complaint. The court denied his motion and, on appeal, Case challenges the court's ruling and claims the evidence was insufficient to sustain his conviction.

## ISSUES

1. Was appellant illegally arrested and, if so, does the illegal arrest bar subsequent prosecution?

2. Did the trial court err by ruling that appellant's prior convictions were admissible for impeachment purposes?

3. Did the trial court abuse its discretion in refusing to dismiss appellant's court-appointed counsel?

4. Was the evidence sufficient to sustain appellant's conviction for first-degree assault?

## ANALYSIS

### I

■ To establish probable cause for the arrest, the state must present evidence that, at the time of the arrest, police officers had factual information from reliable sources from which they could conclude there was probable cause to believe the defendant committed the felony. *State v. Merrill*, 274 N.W.2d 99, 108 (Minn.1978). Although the arresting officers in this case did not see a copy of the complaint or the order for detention, they reasonably relied on information received by the department. *See Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *State v. Conaway*, 319 N.W.2d 35, 39 (Minn.1982). We agree with the trial court that the arresting officers had sufficient probable cause to arrest Case.

■ The complaint, however, was not accompanied by a warrant for Case's arrest. Instead, it included an order for Case's detention. The trial court held Case's arrest was legal because the complaint and order for detention form satisfied all the essential requirements of a warrant. *See* Minn.R.Crim.P. 3.02, subd. 1. However, a piece of paper is not an arrest warrant if it fails to direct the arrest of a person. *State v. Patricelli*, 324 N.W.2d 351, 354 n. 1 (Minn.1982).

■ The state and defense counsel stipulated that the arrest was not legal because there was no valid arrest warrant. We assume, therefore, for purposes of review that the police arrested Case without a valid warrant. Nonetheless, he is not entitled to a new trial because police uncovered no evidence, aside from arresting Case himself, which could be traced to a violation of his constitutional rights. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution nor as a defense to a valid conviction." *State v. Perkins*, 395 N.W.2d 729, 732 (Minn.Ct.

**4**

App.1986) (quoting *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980)). Case cannot claim his body as suppressible evidence arising from the illegal arrest, *United States v. Crews,* 445 U.S. at 474, 100 S.Ct. at 1251, and the trial court properly refused to dismiss the charges against him.

■ Case also claims his conviction must be vacated because more than 36 hours passed between the time of his arrest and the time he first appeared in court. *See* Minn.R.Crim.P. 4.02, subd. 5. Although delays for more than 36 hours are presumptively illegal, *State v. Wiberg,* 296 N.W.2d 388, 392 (Minn.1980), and evidence obtained as a result of such a delay can be excluded by the trial court, *Meyer v. State,* 316 N.W.2d 545, 546–47 (Minn.1982), the police obtained no evidence which was used against Case at trial. Nor could he claim his body as suppressible evidence. Case has not shown he was prejudiced by the delay, and we decline to vacate his conviction solely upon a strict reading of this rule.

**II**

Case did not testify at trial. In a pretrial ruling the court held the state could impeach Case with prior convictions of attempted burglary in 1974 and two 1980 second-degree assault convictions. *See State v. Case,* 312 N.W.2d 246 (Minn.1981). Case claims the ruling was erroneous and infringed his constitutional right to testify on his own behalf.

Under Minn.R.Evid. 609, the trial court has discretion to admit these convictions for impeachment only if the probative value of admitting them outweighs the prejudicial effect. *See* Minn.R.Evid. 609 comment; *State v. Brouillette,* 286 N.W.2d 702 (Minn.1979).

■ Under *State v. Jones* the court is required to consider certain factors in determining whether the probative value of admitting the convictions outweighs its prejudicial effect. *State v. Jones,* 271 N.W.2d 534, 538 (Minn.1978). Applying these factors, we find no error in the trial

court's ruling that the prior convictions were admissible for impeachment.

**III**

Case argues the trial court erred by not dismissing his court-appointed attorney and by not allowing him to choose private counsel. Indigent defendants have a right to a court-appointed attorney, but not a court-appointed attorney of their own choice. *Carey v. State of Minnesota,* 767 F.2d 440 (8th Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 536, 88 L.Ed.2d 467 (1985); *State v. Vance,* 254 N.W.2d 353, 358 (Minn.1977). Although Case had the right to request substitution of counsel, a court should grant the request "only if exceptional circumstances existed and the demand is timely and reasonably made." *Vance,* 254 N.W.2d at 358.

■ The record shows Case's court-appointed attorney was adequately prepared for trial and competently represented him at the omnibus hearing and at trial. The attorney prepared for and argued a difficult case. Case received adequate and competent representation throughout. *See White v. State,* 309 Minn. 476, 248 N.W.2d 281 (1976) (accused is entitled to representation by attorney "exercising the skills and diligence that a reasonably competent attorney would perform under the circumstances").

**IV**

In reviewing a claim of insufficiency of the evidence, an appellate court is limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged.

*State v. Heidelberger,* 353 N.W.2d 582, 591 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984).

■ In addition to Ellis Daniel's testimony, Case admitted to Linda Lucia that he hit Goldberg. All the witnesses testified the attack was unprovoked. The evidence clearly supports the verdict.

■ Finally, Case challenges the constitutionality of Minn.R.Crim.P. 11.03, claiming he has a right to a full evidentiary hearing to determine probable cause to proceed with trial. The adversarial preliminary hearing to determine probable cause became obsolete upon the adoption of rule 11.03, *State v. Rud*, 359 N.W.2d 573, 577 (Minn.1984), and the supreme court has already determined the rule to be constitutional. *State v. Florence*, 306 Minn. 442, 239 N.W.2d 892 (1976).

Case also claims the trial court committed a number of other errors which require that his conviction be vacated. However, none of these alleged violations are supported by facts on the record or applicable law, and we decline to address them.

### DECISION

Affirmed.