**STATE of Minnesota, Respondent,**

v.

**Maurice Darnelle JACKSON, Appellant.**

**No. CO–84–1349.**

Court of Appeals of Minnesota.

April 2, 1985.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LANSING, and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Maurice Jackson was convicted of aggravated robbery, Minn.Stat. § 609.-245 (1982), and unauthorized use of motor vehicle, Minn.Stat. § 609.55, subd. 1 and 2 (1982). On appeal he challenges his aggravated robbery conviction and argues pretrial identification procedures denied him a fair trial, that the evidence was insufficient, and that his sentence was erroneous.

We affirm in part and remand for resentencing.

## FACTS

Around 8:30 p.m. on February 12, 1984, Matthew Iverson was working as a clerk at the Franklin Country Boy store in Minneapolis. He observed a tall black male enter the store. Iverson went to the register. As he rang up the man's purchase, he saw the man point a gun. Iverson was told to look down, and Iverson filled a grocery bag with money and food stamp coupons from the register. This tripped a surveillance camera. The robber then left and Iverson called the police. A pizza delivery driver testified that about the same time he saw a black male acting suspiciously in a gray car parked in front of the Country Boy store. He took down the car's license number, MBD 764.

The next day a police officer detected a gray car with license number MBD 764 listed on the Police Department's stolen sheet. The driver of the car was stopped, arrested, and identified as Jackson. Pursuant to his arrest, Jackson was searched. Numerous loose food stamp coupons and food stamps in new booklets were found on his person.

On February 14, 1984, a police investigator picked up Iverson and took him to the police station to give a statement. During the drive, Iverson was shown three 8" × 10" blow-up photos which had been taken by the store's security camera. Iverson stated he looked at the photos for about five minutes. The photos are fairly grainy and fuzzy and show the robber at the counter.

Iverson was then shown a photo display of eight color photos of eight black males and picked out Jackson's photo as the robber. At this time, Jackson was in custody. No physical lineup was conducted.

Jackson did not testify at trial. He was convicted of aggravated robbery and unauthorized use of a motor vehicle. At sentencing the court imposed a stayed sentence of one year and one day for the unauthorized use offense. This was subsequently executed at Jackson's request.

For the aggravated robbery, the trial court imposed a sentence of 60 months, based on the mandatory minimum sentence for a second offense in which a weapon was used, pursuant to Minn.Stat. § 609.11 (1982).

## ISSUES

1. Were pretrial identification procedures unnecessarily suggestive, creating a substantial likelihood of irreparable misidentification?

2. Was the evidence sufficient?

3. Did the trial court erroneously impose the mandatory minimum sentence under Minn.Stat. § 609.11?

## ANALYSIS

### I.

■ A. Jackson claims the pretrial identification procedures were unnecessarily suggestive and created a substantial likelihood of irreparable misidentification. We agree with the trial court, who carefully analyzed this issue, that viewing of the security camera photos did not create a substantial likelihood of irreparable misidentification, thereby rendering the photo lineup and in-court identification inadmissible. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

The omnibus hearing testimony showed that Iverson saw the robber as he entered the store for a few seconds, viewed him for a few seconds as the robber was at the checkout counter, and saw the side of the robber's face as he left the store. Iverson had a brief but adequate look at the robber in good lighting conditions. His level of certainty in his identification was high. He gave a rather complete description of the robber (black male, 6'–6'2", blue and white baseball cap, blue windbreaker, blue-jeans, some facial hair).

■ Another factor to note is that the time span from the date of the robbery to the date of the photo identification—1½ days—was short. Only 60 days later, there was in-court identification at trial. We are also persuaded that the three surveillance

photos, while Iverson honestly indicated it "didn't hurt" and "did help" him identify Jackson, were sufficiently unclear and fuzzy that they could not have led to a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). As the United States Supreme Court said:

> [W]e cannot say that under all the circumstances of this case there is "a very substantial likelihood of irreparable misidentification." [Citation omitted] Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

*Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977).

In both cross-examination of Iverson and final argument, defense counsel vigorously attacked the credibility of Iverson's identification of Jackson.

■ B. Jackson also claims he was denied due process by the failure to conduct a physical lineup. While physical lineups are encouraged, *see State v. Sickels,* 275 N.W.2d 809, 814 n. 1 (Minn.1979), we are aware of no case which holds it is a denial of due process not to conduct a physical lineup. Defense fully argued the lack of a lineup to the jury. We note also that it is not always possible to arrange a fair physical lineup due to a lack of similarly-appearing individuals.

## II.

■ There is no merit to Jackson's contention that the evidence was insufficient. In addition to Iverson's eyewitness testimony, the state presented the testimony of a delivery driver who saw a black male in a car, later identified as stolen, outside the Country Boy store at the time of the rob-

bery. Jackson was arrested the next day driving that car. Further, numerous loose food stamp coupons were found in Jackson's possession at his arrest, and the evidence showed that about 25 food stamp coupons were stolen from the store.

## III.

Jackson claims the imposition of the mandatory five-year sentence under Minn. Stat. § 609.11, subd. 5, was improper because this was his first felony conviction involving a gun. At sentencing, he argued that a 1982 Illinois conviction was for simple robbery, not armed robbery. In his brief, Jackson attached copies of Illinois records and statutes to support this contention. We agree with the state that this matter is more appropriately addressed at an evidentiary hearing in the district court and thus remand for reconsideration of the sentence.

The court sentenced Jackson first on the unauthorized use conviction and second on the aggravated robbery conviction. Jackson argues that his unauthorized use offense occurred after the aggravated robbery and, therefore, pursuant to Comment II.B.101 of the Sentencing Guidelines [1], he should have been sentenced on the aggravated robbery first. This would have reduced his criminal history score to two. Instead, the court used a criminal history score of three when sentencing on the robbery. (It included one point for the unauthorized use offense.) While this issue may be of no moment if the mandatory sentence is deemed proper upon remand, it is an issue which would require the trial court's attention if the mandatory minimum sentence is deemed not to apply.

## DECISION

Appellant's conviction is affirmed; the matter is remanded to the trial court to determine the merits of appellant's sentencing contentions.

Affirmed in part and remanded.

1. The Comment reads in pertinent part: "When multiple current offenses are sentenced on the same day, sentencing should occur in the order in which the offenses occurred."