**STATE of Minnesota, Respondent,**

v.

**Robert Caldwell SIMS, Appellant.**

**No. C1–85–298.**

Court of Appeals of Minnesota.

Oct. 22, 1985.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J. and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Robert Sims appeals from a conviction of uttering a forged instrument and possession of a forged instrument in violation of Minn.Stat. §§ 609.625, subd. 1, and 609.625, subd. 3 (1984). He contends that identification evidence based on a photo display should have been suppressed because the procedure employed by police was impermissibly suggestive. He also challenges the sufficiency of the evidence to support his conviction. We affirm.

## FACTS

On November 18, 1983, a man entered the Highland Branch of the First Bank Grand and presented a $2,200 check to teller Kathryn Hoover. The check was payable to Charles W. Taylor, who had an account there, and was drawn on the account of a business called Consumer Mail Orders at Minnetonka State Bank. Along with the endorsed check, the man presented a temporary driver's license in the name of Charles Taylor and a photo identification card from Magnetic Peripherals, Inc., bearing the same name.

Hoover asked the man for his account number and excused herself to check on the account balance. Although there was enough money in the account to cash the check, Hoover became suspicious because another man had attempted to cash a $400 check the previous day using the same driver's license.

Hoover took the check to head teller Dorothy Ward, who conferred with the personal banker on duty and discovered by calling Minnetonka State Bank that the check had been stolen. She immediately called police, but before they arrived, the man left the bank. Bank employees saw him drive away in a car which police later determined was registered to Odell Robinson.

The officer who answered the call interviewed the three employees, who described the man attempting to cash the check as, "negro male, 25 years old, 5'9", muscular build, mustache and goatee, curly hair, dark complexion." The officer took the check, the driver's license, and the identification. The case was then turned over to a police sergeant for further investigation.

About three weeks later, the sergeant prepared a photo display containing ten mugshots. Pictures of Odell Robinson and Robert Sims were included in the photo array. Ward and Hoover both identified Sims as the man who tried to cash the check. Hoover testified that immediately before viewing the photos she looked at the photo identification card. Ward testified

that she was not shown the identification card before viewing the photo array.

Sims waived a jury trial, and the trial court combined the trial with the omnibus hearing. Hoover and Ward identified Sims as the man at the bank. Charles Taylor, the payee on the check, testified that he did not endorse the check and had never seen the temporary driver's license that contained his name. Thomas Noyes, who operated Consumer Mail Orders, verified that his business checkbook had been stolen in a burglary in October 1983. Sims does not dispute on appeal that Taylor's and Noyes' signatures were forged.

Sims testified on his own behalf and denied any involvement. He admitted that the photo on the identification card was of him, but claimed the photo was taken from a welfare identification card that he had lost. He admitted several prior felony convictions, including possession of a controlled substance, welfare fraud, and forgery.

His theory at trial was that the police had inadequately investigated the crime and that Odell Robinson, Sims' partner in other criminal activities, was the man at the bank. At the close of evidence the trial court ruled that the photo array of ten black men matched the general description of the suspect and that the pretrial identifications based on the array were not impermissibly suggestive. The trial court found Sims guilty and sentenced him to the presumptive term of 24 months in prison on the charge of uttering a forged instrument.

### ISSUES

1. Did the trial court err by failing to suppress all identification testimony?

2. Is the evidence sufficient to sustain appellant's conviction?

### ANALYSIS

#### I

Sims contends that his conviction must be set aside because the police used suggestive procedures in obtaining the eyewitness identification of him. Specifically, he claims the photo array was improper because the investigating officer should have known that the bank employees would rely on their memory of the photo identification card rather than their memory of the person who presented it. Use of a physical lineup procedure would not have eliminated this problem, as Sims appears to suggest. He also argues, without support in the record, that the photograph of Robinson was too old to be accurate.

A more serious contention is that Hoover's identification of him was tainted because the police showed her the identification card containing Sims' photograph before she viewed the photo array. The test to determine whether a conviction based on eyewitness identification following a photo display should be set aside is whether "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). If the identification procedure was suggestive, the following factors must be considered in evaluating the likelihood of misidentification:

1. The opportunity of the witness to view the criminal at the time of the crime,

2. The witness' degree of attention,

3. The accuracy of the witness' prior description of the criminal,

4. The level of certainty demonstrated by the witness at the confrontation,

5. Length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *See also State v. Sickels*, 275 N.W.2d 809, 814 (Minn.1979); *State v. Jackson*, 365 N.W.2d 777, 778–79 (Minn.Ct.App.1985).

Both Ward and Hoover saw Sims for about ten or fifteen minutes. Hoover testified she was face-to-face with him for five minutes. Ward testified she observed Sims while he was standing at Hoover's teller window for about ten to fifteen minutes.

Both women observed Sims under good lighting conditions.

■ Immediately after the incident they gave police detailed descriptions which fit Sims in several respects including height, complexion, facial hair, and approximate age. Although Hoover saw the photo identification card just before viewing the array, Ward chose Sims' photo without first viewing the identification card. Both witnesses immediately identified Sims and have never wavered in their identification. They identified him within three weeks of the incident. The trial court specifically asked Hoover whether she had any reservations about her identification of Sims as the man in the bank, and she replied "No, I don't."

Although it is not the best police procedure to show a witness a picture of a suspect immediately before a lineup or photo array, in this case Hoover had already seen the identification card at the bank and had ample opportunity to compare the similarities and dissimilarities between Sims and the photo during the transaction. Neither her pretrial nor her in-court identification of Sims were so tainted by this suggestive procedure as to deny him due process of law. *See, e.g., State v. Witt,* 310 Minn. 211, 245 N.W.2d 612 (1976). We cannot say that the procedure followed here was so unnecessarily suggestive as to create under all the circumstances a "very substantial likelihood of irreparable misidentification." *See Neil v. Biggers,* 409 U.S. at 198, 93 S.Ct. at 381.

## II

■ In reviewing the sufficiency of the evidence in a criminal matter, the court must view the evidence in a light most favorable to the state and assume the trier of fact believed the state's witnesses and disbelieved any contradictory evidence. *See State v. Parker,* 353 N.W.2d 122 (Minn. 1984).

Applying this standard, it is clear the trial court found the eyewitness testimony to be accurate and disbelieved appellant's

testimony. The evidence is sufficient to sustain his conviction.

## DECISION

Appellant's conviction is affirmed.

Affirmed.