Coley (NMN) GATES,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C6–85–2273.

Court of Appeals of Minnesota.

Sept. 30, 1986.

Review Granted Nov. 26, 1986.

Charles L. Hawkins, Thomson & Hawkins, St. Paul, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ.

### OPINION

FOLEY, Judge.

Appellant Coley Gates was convicted of assault in the second degree for shooting two people at a Minneapolis bar. The post-conviction court denied his petition for

post-conviction relief based on ineffective assistance of counsel. We reverse and remand for a new trial.

## FACTS

Appellant was charged with three counts of assault in the second degree for shooting and injuring several people at the Taste Lounge in Minneapolis on April 17, 1983. The evidence showed that around 12:30 a.m. appellant was asked by two bouncers, Craig Peterson and Sylvester Washington, to leave since he was barred from the club. After an argument and scuffle, appellant agreed to leave.

A few minutes later Peterson saw appellant outside the bar appearing as if he was going to re-enter. Peterson testified that shortly after this observation the door swung open and appellant entered. Peterson testified that he took a step toward appellant and as he did so, "a gun went off at the side of him, smoke came out of his hand." In the ensuing moments, Peterson was shot, suffering wounds to the arm, thigh and stomach. As appellant shot at Peterson, a customer, Diane Pike, was starting down the stairs and was shot in the leg. She did not see who shot her, but her friends, Lisa Phillips and Renee Cyr positively identified appellant as the assailant from a photo display and, subsequently, in court.

Appellant's private counsel, Wayne Salita, examined the entire file. Salita received a legal fee but did not conduct an independent investigation because appellant did not provide the money to do so and because he told Salita he was not interested in investigation. Although Salita believed that an independent investigation should be conducted, he did not petition the court for funds to hire an investigator. Salita interviewed Minneapolis Police Officer John Resch, who was outside the bar when the shootings occurred and heard the shots. He also interviewed witnesses from a list of names provided by appellant but did not subpoena them, relying instead on appellant's assurances that these witnesses would appear at trial and the content of

their testimony. One of the witnesses, Walter Kennedy, testified for the defense.

Salita received a "Rule 7.01" notice that the prosecutor had evidence obtained through search and seizure, confessions, admissions or statements in the nature of confessions, evidence discovered as a result of defendant's statements, and evidence obtained from photograph displays of identification. Salita believed there were no constitutional issues involved and, consequently, did not move to suppress any evidence. Salita further believed the photo display was a fair line-up and was not subject to constitutional challenge. Therefore, he did not demand an evidentiary hearing to test possible suggestiveness by the officer while the witnesses were looking at the line-up.

Shortly before trial, appellant told Salita that he did not commit the crime but would not tell him who did. The day before trial appellant told Salita that "Mickey Johnson" did the shooting. Salita did not request a continuance.

Based on Salita's advice, appellant waived a jury trial. Appellant testified in his own behalf and identified Mickey Johnson as the perpetrator. During direct examination, Salita asked appellant when he told Salita who the perpetrator was and appellant replied "this week." Salita then asked appellant, "You never wanted to tell me?" Appellant answered, "No, I didn't."

Appellant was convicted of two counts of assault in the second degree. Subsequently, he filed a petition for post-conviction relief alleging ineffective counsel. At the post-conviction proceeding, Joseph Friedberg and John Wylde testified as experts in the field of criminal defense. Friedberg examined part of the file, read the trial transcript and was present during Salita's testimony at the post-conviction hearing. He concluded that Salita's representation was below prevailing professional standards and that, as a result, appellant was denied effective assistance of counsel. Wylde had not examined the file but had read the transcript and attended the cross-examination of Salita at the post-conviction

proceeding. Wylde concluded that Salita's representation was below professional norms and that the outcome of trial could have been different as a result.

The post-conviction court concluded that Salita's representation was below prevailing professional standards in this legal community but that appellant did not establish a reasonable probability that but for Salita's unprofessional errors, the outcome of the trial would probably be different.

## ISSUE

Did the post-conviction court err in determining that appellant was not denied effective assistance of counsel?

## ANALYSIS

The sixth amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970). This right is needed to protect the fundamental right to a fair trial. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

To reverse a conviction based on ineffective counsel, a defendant must show that counsel's performance was deficient as measured by an objective standard of reasonableness under prevailing professional norms, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 2066. However, a claim of ineffectiveness must be considered on the facts of the particular case. *Id.* In this case, we will discuss several areas relating to the ineffective counsel claim.

### 1. *Violation of Attorney-Client Confidentiality*

Defense counsel must be an advocate on behalf of the client. *Anders v. State of California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). Counsel

has an "overarching duty to advocate the defendant's cause" and be loyal to the client. *Nix v. Whiteside*, — U.S. —, —, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986) (quoting *Strickland*, 466 U.S. at 688–689, 104 S.Ct. at 2065). Here, two days before trial appellant disclosed to his attorney that "Mickey Johnson" was the perpetrator of the crime. Rather than request a continuance, however, Salita proceeded to trial. At trial, Salita *impeached his own client* by suggesting a possible recent fabrication during direct examination in asking appellant when he told him that Johnson was the perpetrator. Moreover, the information disclosed was information protected by the attorney-client privilege. This breach of confidentiality served no purpose other than possibly protecting Salita's own interests; it is not within the realm of legitimate trial tactics. *See State v. Wiplinger*, 343 N.W.2d 858, 861 (Minn.1984) (new trial granted because defense counsel impliedly admitted defendant's guilt in cross-examination of victim and her grandmother).

### 2. *Failure to Investigate*

A reasonable investigation is necessary to make informed trial tactical decisions. *See Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

ABA Standards for Criminal Justice, "The Defense Function," § 4–4.1 (2d ed. 1980).

Here, appellant's only defense was that someone else was the perpetrator. An adequate investigation was obviously required

since between 300 to 400 people were in the bar when the shootings occurred. Even Salita agreed at the post-conviction hearing that an investigation should have been made. The failure to perform any investigation was inexcusable under the circumstances and was not within the realm of legitimate trial tactics.

### 3. *Other Areas of Ineffectiveness*

Salita's failure to challenge the photo line-up is also deficient counsel performance. While the photos themselves may have reflected a fair line-up, competent defense counsel should have at least advanced the possibility that the identification procedure was impermissibly suggestive. *See Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *State v. Hicks,* 380 N.W.2d 869, 872 (Minn.Ct.App.1986).

In addition, although Salita interviewed prospective witness Maurice Peal by telephone, he did not call him as a witness, despite his availability at trial. Peal testified at the post-conviction hearing that he was near appellant at the time of the shooting, that appellant did not have a gun and that he was not the assailant. The failure to call this witness is deficient performance.

We are persuaded that based on the totality of these facts, appellant was not provided an adequate defense. Appellant has demonstrated prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

We are mindful of the post-conviction court's conclusion that although Salita's representation was below professional standards, appellant did not show that a different outcome would probably have occurred at trial. However, we must take into account the fact that since there was a waiver of a jury trial, the post-conviction court functioned as the actual finder of

fact at trial. In effect, the post-conviction court stated that despite counsel's ineffectiveness (including no investigation), it would have found appellant guilty. We do not think the post-conviction court's observations are the product of an objective review of the record. As we view the record, based on the totality of the circumstances, appellant's basic right to a fair trial was denied.

### DECISION

Appellant is entitled to a new trial because he was not provided reasonably effective assistance of counsel.

Reversed and remanded for new trial.

HUSPENI, J., concurs specially.

HUSPENI, Judge (concurring specially).

While I agree with the result reached by the majority, I would cite as the sole basis for reversal and remand the failure of defense counsel to conduct an investigation.

Defendant waived a jury trial. The fact finder was the trial judge. He was also the presiding judge at the post-conviction hearing. In his post-conviction memorandum he observed:

> * * * nothing specific was shown that would have changed the evidence in this case or the result.

While I accept that determination as it pertains to the line-up, to defense counsel's impeachment of his client, and to the credibility of Maurice Peal, it is impossible to determine what evidence an investigation may have unearthed and what effect that evidence may have had on the trial court sitting as finder of fact.